Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
11/16/2018 09:10 AM CST

State of Nebraska, appellee, v.
Kevin Allen, appellant.
___ N.W.2d ___

Filed November 16, 2018.    No. S-17-771.

1. **Postconviction: Constitutional Law: Appeal and Error.** In appeals from postconviction proceedings, an appellate court reviews de novo a determination that the defendant failed to allege sufficient facts to demonstrate a violation of his or her constitutional rights or that the record and files affirmatively show that the defendant is entitled to no relief.
2. **Postconviction: Constitutional Law: Judgments.** Postconviction relief is available to a prisoner in custody under sentence who seeks to be released on the ground that there was a denial or infringement of his or her constitutional rights such that the judgment was void or voidable.
3. **Postconviction: Constitutional Law: Proof.** In a motion for postconviction relief, the defendant must allege facts which, if proved, constitute a denial or violation of his or her rights under the U.S. or Nebraska Constitution, causing the judgment against the defendant to be void or voidable.
4. **Postconviction.** Postconviction relief is a very narrow category of relief.
5. **Postconviction: Proof.** In a postconviction proceeding, an evidentiary hearing is not required (1) when the motion does not contain factual allegations which, if proved, constitute an infringement of the movant's constitutional rights; (2) when the motion alleges only conclusions of fact or law; or (3) when the records and files affirmatively show that the defendant is entitled to no relief
6. ____: ____. In the absence of alleged facts that would render a judgment void or voidable, the proper course is to overrule a motion for postconviction relief without an evidentiary hearing.
7. **Postconviction: Appeal and Error.** A motion for postconviction relief cannot be used to secure review of issues which were or could have been litigated on direct appeal.

8. ____: ____. Plain error cannot be asserted in a postconviction proceeding to raise claims of error by the trial court.

9. **Postconviction: Effectiveness of Counsel: Appeal and Error.** Although a motion for postconviction relief cannot be used to secure review of issues which were or could have been litigated on direct appeal, when a defendant was represented both at trial and on direct appeal by the same lawyer, the defendant's first opportunity to assert ineffective assistance of counsel is in a motion for postconviction relief.

10. ____: ____: ____. To establish a right to postconviction relief because of counsel's ineffective assistance, the defendant has the burden, in accordance with *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), to show that counsel's performance was deficient; that is, counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law, and then the defendant must show that counsel's deficient performance prejudiced the defense in his or her case.

11. **Effectiveness of Counsel: Proof.** To establish the prejudice prong of a claim of ineffective assistance of counsel, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different.

12. **Trial: Polygraph Tests.** The results of polygraph examinations are not admissible into evidence.

13. **Postconviction.** An evidentiary hearing is not required when a motion for postconviction relief alleges only conclusions of fact or law without supporting facts.

Appeal from the District Court for Douglas County: W. Mark Ashford, Judge. Affirmed.

Kevin Allen, pro se.

Douglas J. Peterson, Attorney General, and Kimberly A. Klein for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, and Papik, JJ.

Funke, J.

Kevin Allen appeals from the denial of postconviction relief without an evidentiary hearing. Allen asserts that he was denied a fair trial, that he was prejudiced by ineffective assistance of counsel at trial and on direct appeal, and that he was

entitled to a hearing based on newly discovered evidence. We determine that Allen's postconviction motion fails to state a claim for relief. Thus, we affirm the district court's denial of postconviction relief without an evidentiary hearing.

## BACKGROUND

This appeal follows our decision on Allen's direct appeal in *State v. Allen*,[1] which affirmed Allen's jury trial convictions of first degree murder and use of a firearm to commit a felony in the shooting of an Omaha, Nebraska, police officer, James B. "Jimmy" Wilson, Jr. The district court for Douglas County sentenced Allen to life imprisonment on the murder conviction and 18 to 20 years' imprisonment on the use of a firearm to commit a felony conviction, to be served consecutively. We determined that all of Allen's assigned errors on direct appeal were without merit. As we will discuss, Allen's motion for postconviction relief raises many of the same issues addressed on direct appeal.

### Shooting

On August 20, 1995, at 8 p.m., Wilson radioed for a license plate check on a brown Chevrolet van and was informed that the plate was expired and was assigned to a blue Mazda. Wilson radioed that he would stop the van and began to radio the location of the stop but never completed his communication. Police officers in the area reported hearing multiple gunshots. Officers responded to an "officer needs assistance" call and discovered Wilson's police cruiser at 40th and Blondo Streets. The cruiser had been hit by 11 rounds of gunfire. Wilson was shot four times; three times in the head. He was found deceased with his seatbelt still on and the radio microphone still in his hand.

At the time, Allen was a member of the "South Family Bloods" gang and had the street nickname "Dumb." On August

---

[1] *State v. Allen*, 252 Neb. 187, 560 N.W.2d 829 (1997), *disapproved in part, State v. Myers*, 258 Neb. 300, 603 N.W.2d 378 (1999).

20, 1995, members of the gang, including Allen, were driving around Omaha in a brown and tan Chevrolet van. Allen was driving the van earlier in the afternoon and stopped at a convenience store to purchase gasoline. Dion Harris later replaced Allen as the driver and drove for the remainder of the day.

Harris drove to his mother's house, and Tavias Minor went inside and returned with a bag containing a rifle with a banana-shaped ammunition clip. The group then headed to North Omaha and stopped for gas at another convenience store at approximately 7:35 p.m. When they left the store, Harris was sitting in the driver's seat, Ronney Perry was sitting in the passenger's seat, Minor was seated behind the driver, and Allen was seated in the back next to the sliding door.

Shortly thereafter, Wilson activated his police cruiser's overhead lights and pulled over the van. Three eyewitnesses—LaKeisha Lucas, LaTasha Lucas, and Stephanie Bean—told police that they saw one gunman exit the van through the sliding door and shoot Wilson. The murder weapon was never recovered, but police determined that the weapon that killed Wilson was a semiautomatic rifle. Witnesses provided inconsistent renditions of the facts during the postshooting investigation, which we summarize below as relevant to Allen's postconviction appeal.

POSTSHOOTING CHRONOLOGY

Police tracked the van to a housing community in South Omaha and conducted door-to-door interviews and searches. Otis Simmons, Perry, Harris, Minor, and the owner of the van were contacted by the police and taken to the police station for additional questioning. Simmons initially stated that he was at the movies at the time of the shooting, but then stated that he, Perry, Harris, Minor, Allen, and Quincy Hughes all participated in the shooting and that Allen was the shooter. Perry stated that Simmons, Harris, and Minor were at the scene, that Hughes and Allen jumped out of the van, and that Allen was the shooter.

Police executed a search warrant on Hughes' home and arrested Hughes and seized some rap lyrics he had written. Hughes provided a detailed alibi. Eyewitnesses Bean, LaKeisha Lucas, and Tyran McCleton identified Hughes out of a lineup as the shooter. LaTasha Lucas stated that Hughes closely resembled the shooter. Simmons and Perry changed their stories and claimed that Hughes was the shooter, not Allen. Prosecutors outlined this evidence at a preliminary hearing to establish probable cause that Hughes was the shooter.

Two months later, Simmons and Perry both recanted their statements that Hughes was the shooter after being given polygraph examinations. The results indicated that Simmons and Perry were deceptive when they denied that Hughes was the shooter. Simmons went back to his original statement that he was at the movies. Perry reverted to his earlier statement that Allen was the shooter. The State reopened the investigation and conducted further interviews of alibi witnesses. In exchange for time served, Minor agreed to testify that Allen shot Wilson and that Simmons and Hughes were not at the scene. Minor sat for a deposition conducted by Allen's counsel.

## TRIAL

The State dismissed charges against Hughes without prejudice and filed charges against Allen. At trial, Perry testified that Allen was the shooter. The following exchange occurred during direct examination of Perry:

"Q. Okay. And after [Harris] pulled over, did anybody say anything?

"A. [Perry]: [Allen] said he ain't going back to jail.

"Q. Okay. What happened then?

"A. He got out and started shooting.

"Q. Who did?

"A. Kevin.

"Q. Kevin Allen?

"A. Yeah.

". . . .

"Q. Okay. So Kevin Allen, or Dumb, got out. Did he have a gun with him when he got out of the van?

"A. Yep.

"Q. What gun?

"A. The rifle.

"Q. Okay. And what door did he get out of . . . ?

"A. Sliding door."[2]

The State supported its theory that Allen was the shooter by offering Minor's deposition testimony. Security photographs were offered to show that Allen purchased gasoline at the first convenience store. The police laboratory identified nine latent fingerprints from Allen around the driver's seat and near the rear passenger seat next to the sliding door. No fingerprints from Hughes were found in the van.

Allen's theory of defense was that he was innocent and that Hughes was the shooter. The defense focused on the inconsistent accounts given by Simmons and Perry, the fact that the State initially charged Hughes, and the fact that Bean and McCleton testified that Hughes was the shooter. In rebuttal, the State provided testimony in support of Hughes' alibi. After the close of evidence, and following arguments and deliberations, the jury convicted Allen on both counts.

DIRECT APPEAL

On direct appeal, Allen assigned, restated, that the district court erred in (1) refusing to instruct the jury that it could not speculate as to what potential alibi witnesses for Simmons and Hughes, who were identified but not called, might have said had they testified; (2) refusing to instruct the jury that the charges against Hughes had been dismissed without prejudice and that the State could have refiled charges against Hughes; (3) allowing the State to read into evidence Minor's deposition testimony after he asserted his Fifth Amendment rights part way through his live testimony; (4) excluding from evidence

---

[2] *Id.* at 191, 560 N.W.2d at 835.

four of the five offered exhibits that contained rap lyrics written by Hughes and refusing Allen's requested jury instruction that a felon (Hughes) in possession of a gun with a barrel less than 18 inches in length is guilty of a Class IV felony; (5) prohibiting inquiry into the fact that Simmons and Perry failed polygraph examinations when they denied Hughes was the shooter; (6) excluding from evidence the information filed against Hughes and the State's position at the preliminary hearing that Hughes shot Wilson; (7) denying Allen's motions that would have allowed for African-American jurors to be selected; (8) applying the rule that minorities can be preemptorially challenged as long as a race-neutral reason for the challenge can be articulated; and (9) permitting the preemptory challenge of juror No. 43, an African-American.

We found no merit to any of Allen's assigned errors. We found no merit to Allen's first assignment of error, because, contrary to Allen's assertion, the court instructed the jury to not speculate as to what the testimony of witnesses who were not called would have been. We found no merit to Allen's second assignment of error, because even though the State did not believe that Hughes shot Wilson after reexamining Hughes' alibi, the State never suggested to the jury that charges against Hughes could not be refiled, and Allen was free to argue that the charges against Hughes could be refiled if additional evidence pointed to Hughes.

Regarding Allen's third assignment of error, we found that Minor's out-of-court deposition testimony was admissible without violating the Confrontation Clause, because the testimony was properly admitted under Neb. Evid. R. 804(2)(a), Neb. Rev. Stat. § 27-804(2)(a) (Reissue 1995), a firmly rooted hearsay exception. As an issue of first impression, we concluded that rule 804(2)(a) controlled over Neb. Rev. Stat. § 29-1917(4) (Reissue 1995) regarding the use of a deposition when the deponent is unavailable as a witness at trial. We found that the requirements of rule 804(2)(a) were met, because Minor's deposition was taken by Allen's counsel

in compliance with Nebraska law and in the course of the same criminal proceeding in which it was offered and because Allen's counsel had an opportunity to develop Minor's testimony with a similar interest or motive on matters related to Allen's defense. For example, Allen's counsel questioned Minor, knowing that Minor would testify that Allen was the shooter and that Minor would provide this testimony based on an agreement he made with the State. We therefore agreed with the district court's conclusion that Minor's deposition testimony was reliable and admissible under rule 804(2)(a).

We found no merit to Allen's fourth assignment of error, because the court did admit an exhibit that contained rap lyrics written by Hughes and excluded four other exhibits containing Hughes' lyrics as cumulative of evidence already admitted. The exhibit admitted by the court provided:

"[**Gates Of Hell.**] My life has been hell in and out of jail so all I got is a fuck it mentality and kill tha devil when he comes for me Im gona have to hold court in the street G, Ill be dam if I go back to a cell . . . ."[3]

We also concluded that the court did not err in rejecting Allen's proposed instruction stating that a felon who possesses a firearm with a barrel less than 18 inches commits a felony offense. There was testimony at trial that a handgun was in the van on the night of the shooting, and the parties stipulated that Hughes had a prior felony conviction. Allen argued the court should have given the proposed instruction in order to allow him to demonstrate that Hughes had a motive to shoot Wilson. We determined that Allen was not prejudiced by the court's refusal to give the requested instruction, because the instruction was irrelevant to the charges against Allen and, even without the instruction, Allen had an opportunity to introduce evidence and argue to the jury that Hughes had a motive to shoot Wilson.

---

[3] *Id.* at 202, 560 N.W.2d at 841.

Allen's fifth assignment of error was without merit, because the court properly concluded that evidence concerning a polygraph examination is inadmissible under Nebraska law. We found no merit to Allen's sixth assignment of error, because the court did not err in excluding from evidence the State's position at the preliminary hearing that Hughes was the shooter, the information filed against Hughes, and Hughes' docket sheet. We found the proffered evidence was not relevant, because the State's decision to charge Hughes was not probative as to whether Allen shot Wilson. Rather, the relevant evidence was the witness testimony regarding the facts and events surrounding the shooting. Moreover, the State had admitted throughout trial that it made a mistake in charging Hughes. Therefore, the excluded evidence was cumulative to evidence before the jury.

We found no merit to Allen's seventh and eighth assignments of error, because Allen's position was contrary to settled law regarding jury selection proceedings. Lastly, we found no merit to Allen's ninth assignment of error, because the State provided a race-neutral reason for excusing juror No. 43.[4]

### Postconviction

In the fall of 2007, the clerk of the district court for Douglas County docketed a verified motion for postconviction relief filed by Allen, pro se. For reasons not provided in this record, the court did not rule upon Allen's pro se motion, a delay which troubles this court. The court later appointed counsel to represent Allen on his postconviction motion in district court. Through counsel, Allen filed an amended motion for postconviction relief on July 1, 2016. Allen's amended motion asserted five causes of action: (1) denial of the right to a fair trial; (2) ineffective assistance of trial counsel; (3) ineffective assistance of appellate counsel; (4) prosecutorial misconduct; and (5) newly discovered evidence. The State moved to

---

[4] See *Allen, supra* note 1.

dismiss Allen's amended motion, and the court granted the State's motion.

The court found Allen's first and fourth causes of action were procedurally barred, because Allen's arguments about the fairness of trial and prosecutorial misconduct could have been brought on direct appeal. The court found Allen's second cause of action was not procedurally barred, because Allen had the same counsel at trial and on direct appeal and this was Allen's first opportunity to raise ineffective assistance of counsel claims. The court, however, determined that Allen had not pointed to any defective actions taken by counsel. The court, for the same reasons, determined Allen's cause of action for ineffective assistance of appellate counsel was without merit and stated that inclusion of Allen's postconviction arguments on direct appeal would not have changed the result of the appeal.

The court found no merit to Allen's fifth cause of action regarding the discovery of new evidence. The court found the proper course would have been to file a motion for new trial under Neb. Rev. Stat. § 29-2101(5) (Reissue 2016) rather than to pursue postconviction relief. The court found Allen was not entitled to an evidentiary hearing.

Allen appealed and proceeds as a self-represented litigant. On appeal, he contends the court erred in failing to grant him an evidentiary hearing.

## ASSIGNMENTS OF ERROR

Allen assigns, condensed and restated, that the district court erred in (1) prohibiting Allen from cross-examining Minor and failing to strike Minor's trial testimony after Minor invoked his Fifth Amendment rights and permitting Minor's deposition to be read into evidence, in contravention of Allen's Sixth Amendment right to confront his accuser; (2) failing to grant Allen postconviction relief based on ineffective assistance of trial counsel; (3) failing to grant Allen postconviction relief based on ineffective assistance of appellate counsel;

and (4) failing to grant Allen an evidentiary hearing based on newly discovered evidence.

## STANDARD OF REVIEW

[1] In appeals from postconviction proceedings, an appellate court reviews de novo a determination that the defendant failed to allege sufficient facts to demonstrate a violation of his or her constitutional rights or that the record and files affirmatively show that the defendant is entitled to no relief.[5]

## ANALYSIS

[2-6] Postconviction relief is available to a prisoner in custody under sentence who seeks to be released on the ground that there was a denial or infringement of his or her constitutional rights such that the judgment was void or voidable.[6] In a motion for postconviction relief, the defendant must allege facts which, if proved, constitute a denial or violation of his or her rights under the U.S. or Nebraska Constitution, causing the judgment against the defendant to be void or voidable.[7] Relief under the Nebraska Postconviction Act[8] is a very narrow category of relief.[9] In a postconviction proceeding, an evidentiary hearing is not required (1) when the motion does not contain factual allegations which, if proved, constitute an infringement of the movant's constitutional rights; (2) when the motion alleges only conclusions of fact or law; or (3) when the records and files affirmatively show that the defendant is entitled to no relief.[10] In a few previous postconviction appeals, we have stated that in the absence of alleged facts that would render the judgment void or voidable, the proper

---

[5] *State v. Foster*, 300 Neb. 883, 916 N.W.2d 562 (2018).

[6] *State v. Newman*, 300 Neb. 770, 916 N.W.2d 393 (2018).

[7] *Id.*

[8] Neb. Rev. Stat. §§ 29-3001 to 29-3004 (Reissue 2016).

[9] *Foster, supra* note 5.

[10] *Newman, supra* note 6.

course is to dismiss the motion for postconviction relief for failure to state a claim.[11] This articulation is couched in terms of a rule of civil pleading,[12] and it originated prior to our opinion in *State v. Robertson*.[13] In *Robertson*, we clarified that postconviction proceedings are not governed by the Nebraska Court Rules of Pleading in Civil Cases.[14] Thus, we take this opportunity to disapprove of the former articulation. A more precise formulation is that in the absence of alleged facts that would render the judgment void or voidable, the proper course is to overrule the motion for postconviction relief without an evidentiary hearing.

## FAIR TRIAL CHALLENGE
### PROCEDURALLY BARRED

Allen asserts that the district court erred in failing to grant an evidentiary hearing based on allegations that the district court committed prejudicial error during Allen's trial. Allen argues that the court erred in permitting Minor to invoke his Fifth Amendment rights against self-incrimination midway through his testimony. Allen also asserts that the court erred in failing to strike Minor's in-court testimony and permitting the State to read portions of Minor's deposition into evidence.

[7,8] We conclude that the district court properly found these allegations were procedurally barred, because they could have been and actually were raised and addressed on direct appeal. Postconviction relief is available only to remedy prejudicial constitutional violations.[15] A motion for postconviction relief cannot be used to secure review of issues which were

---

[11] See, *Foster, supra* note 5; *State v. Haynes*, 299 Neb. 249, 908 N.W.2d 40 (2018); *State v. Ryan*, 287 Neb. 938, 845 N.W.2d 287 (2014).

[12] See Neb. Ct. R. Pldg. § 6-1112(b)(6).

[13] *State v. Robertson*, 294 Neb. 29, 881 N.W.2d 864 (2016).

[14] *Id.*

[15] *State v. Ross*, 296 Neb. 923, 899 N.W.2d 209 (2017).

or could have been litigated on direct appeal.[16] Allen asserts that we should consider his arguments that the trial court erred under a plain error analysis. Plain error cannot be asserted in a postconviction proceeding to raise claims of error by the trial court.[17] We therefore affirm the denial of postconviction relief as to Allen's first assignment of error.

## Trial Counsel Was Not Ineffective

[9] Although a motion for postconviction relief cannot be used to secure review of issues which were or could have been litigated on direct appeal, when a defendant was represented both at trial and on direct appeal by the same lawyer, the defendant's first opportunity to assert ineffective assistance of counsel is in a motion for postconviction relief.[18] Allen's ineffective assistance of trial counsel claim is properly before us.

[10,11] To establish a right to postconviction relief based on a claim of ineffective assistance of counsel, the defendant has the burden, in accordance with *Strickland v. Washington*,[19] to show that counsel's performance was deficient; that is, counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law, and then the defendant must show that counsel's deficient performance prejudiced the defense in his or her case.[20] To establish the prejudice prong of a claim of ineffective assistance of counsel, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different.[21] A court may address

---

[16] *Id.*

[17] *State v. Sepulveda*, 278 Neb. 972, 775 N.W.2d 40 (2009).

[18] *Id.*

[19] *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

[20] See *Foster, supra* note 5.

[21] *Id.*

the two prongs of this test, deficient performance and prejudice, in either order.[22]

Allen asserts that his trial counsel was ineffective in failing to call certain witnesses at trial to support his defense that he was innocent. The postconviction motion before the district court referred to trial counsel's alleged failure to investigate, interview, or call nine different witnesses; Allen's brief on appeal contends that three witnesses should have been called to testify: Clarence Burns, Clyde Smith, and Richard Circo.

Allen alleges that had Burns been called as a witness, he would have testified that the individual who shot Wilson matched the description of Hughes. However, the jury was already provided with testimony from multiple witnesses that Hughes was the shooter. Allen does not explain how the testimony of Burns would have changed the jury's decision, given that the jury was already presented with evidence supporting Allen's theory of the case. Allen's postconviction motion before the district court asserted that Burns' testimony would have bolstered a description of the shooter provided by McCleton. However, there is no reason why McCleton's testimony was critical to the jury's decision. While McCleton stated that Hughes was the shooter, he admitted that he never saw the individual who shot the gun, and only heard the gunshots.

Allen contends that had Smith been called to testify, he would have said that when the van stopped, he saw Minor and two other individuals who he was unable to identify exit the van. In addition, Smith was unable to identify Allen out of a lineup. Like the testimony which Burns allegedly would have provided, Smith's testimony would not have been critical and would not have proved whether Allen was or was not the shooter at the scene of the murder at 40th and Blondo Streets.

---

[22] *Id.*

Allen claims that his counsel should have offered the testimony of Circo, a polygraph examiner with the Omaha Police Department who conducted polygraph tests on Simmons and Perry. Circo stated in his deposition that when Simmons and Perry denied that Hughes was the shooter, they were not truthful. However, this evidence would have been inadmissible under Nebraska law.

[12] We have consistently held that the results of polygraph examinations are not admissible into evidence in this state.[23] We have stated that "the scientific principle involved in the use of such polygraph has not yet gone beyond the experimental and reached the demonstrable stage, and that it has not yet received general scientific acceptance,"[24] and we have generally affirmed the exclusion of polygraph evidence. We have more recently stated that "[t]here is no consensus that polygraph evidence is reliable, and a fundamental principle of the justice system is that the jury is the lie detector, determining the weight and credibility of witness testimony."[25]

We have specifically prohibited the admission of the results of polygraph examinations in evidence, and we have disapproved of any reference to polygraph tests.[26] Although the results of a polygraph test are not admissible in evidence, the "mere mention of the word 'polygraph,' absent more, does not constitute prejudicial error."[27] But we have held that a mere reference to a polygraph examination is improper where the

---

[23] See, *Allen, supra* note 1; *State v. Walker*, 242 Neb. 99, 493 N.W.2d 329 (1992); *State v. Steinmark*, 195 Neb. 545, 239 N.W.2d 495 (1976).

[24] *Boeche v. State*, 151 Neb. 368, 377, 37 N.W.2d 593, 597 (1949). See *Parker v. State*, 164 Neb. 614, 83 N.W.2d 347 (1957).

[25] *State v. Castaneda*, 287 Neb. 289, 303, 842 N.W.2d 740, 752 (2014), citing *United States v. Scheffer*, 523 U.S. 303, 118 S. Ct. 1261, 140 L. Ed. 2d 413 (1998).

[26] See *State v. Temple*, 192 Neb. 442, 222 N.W.2d 356 (1974).

[27] *State v. Anderson and Hochstein*, 207 Neb. 51, 67, 296 N.W.2d 440, 451 (1980). See *State v. Beach*, 215 Neb. 213, 337 N.W.2d 772 (1983).

credibility of a witness is impacted.[28] Our decisions in this area have recognized that it is the jury's responsibility to determine the credibility of witnesses and that polygraph evidence interferes with this process.

Circo's alleged testimony would have been introduced for the purpose of undermining the credibility of witnesses based on his reading of their polygraph examinations. This evidence would have interfered with the jury's role to determine the credibility of Simmons and Perry and would not have been admissible.

Because the alleged testimony of Burns and Smith would not have affected the outcome of the case, and because Circo's testimony would have been prohibited, Allen's claim that trial counsel was ineffective for declining to call these witnesses is without merit.

Allen asserts that he was prejudiced by trial counsel's failure to object to the admission of an assault rifle with a banana-shaped ammunition clip into evidence. Similarly, Allen asserts that a certain witness should not have been permitted to testify that police found a black gun in her apartment, but that the witness did not know how the gun got there. The issue before the jury was not whether guns were involved in the murder or whether a shooting had occurred, but whether the State proved that Allen shot Wilson beyond a reasonable doubt. As there was no dispute that someone exited the van and shot Wilson, there is no reason why the probative value of evidence of firearms would have been substantially outweighed by the danger of unfair prejudice.[29] Therefore, Allen has not shown that an objection would have led to the exclusion of the evidence. Counsel is not ineffective for failing to make an objection that has no merit.[30]

---

[28] See, *Castaneda, supra* note 25; *State v. Riley*, 281 Neb. 394, 796 N.W.2d 371 (2011).

[29] See Neb. Evid. R. 403, Neb. Rev. Stat. § 27-403 (Reissue 2016).

[30] See *State v. Stricklin*, 300 Neb. 794, 916 N.W.2d 413 (2018).

We therefore affirm the denial of postconviction relief as to Allen's second assignment of error.

### Appellate Counsel Was Not Ineffective

Allen's motion for postconviction relief alleged that his appellate counsel was ineffective by failing to assign that the district court erred in permitting Minor to invoke his Fifth Amendment rights against self-incrimination midway through his testimony, failing to strike Minor's in-court testimony, and permitting the State to read portions of Minor's deposition into evidence. In addition, Allen contended that appellate counsel was ineffective for failing to raise claims of prosecutorial misconduct.

When a claim of ineffective assistance of appellate counsel is based on the failure to raise a claim on appeal of ineffective assistance of trial counsel (a layered claim of ineffective assistance of counsel), an appellate court will look at whether trial counsel was ineffective under the *Strickland*[31] test.[32] If trial counsel was not ineffective, then the defendant was not prejudiced by appellate counsel's failure to raise the issue.[33] Much like claims of ineffective assistance of trial counsel, the defendant must show that *but for* counsel's failure to raise the claim, there is a reasonable probability that the outcome would have been different.[34]

However, in Allen's brief, he merely argues that his defense "was highly prejudiced by appella[te] counsel['s] lack of concern or interest in effectively challenging . . . constitutional concerns on direct appeal."[35] He fails to discuss how appellate counsel lacked concern or lacked interest. In addition, he

---

[31] *Strickland, supra* note 19.

[32] *Foster, supra* note 5.

[33] *Id.*

[34] *Id.*

[35] Brief for appellant at 30.

fails to discuss any of the contentions raised in his motion for postconviction relief. As we have said many times, an alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court.[36] Because Allen's brief fails to argue the assigned error, we decline to address it. We therefore affirm the denial of postconviction relief as to Allen's third assignment of error.

## Newly Discovered Evidence
### Claim Without Merit

[13] Allen asserts that he should have been granted an evidentiary hearing based on the claim that newly discovered evidence suggests that law enforcement officials might have tampered with forensic evidence involved in his case. Allen's claim concerns David Kofoed, the former supervisor of the Crime Scene Investigation Division for the Douglas County, Nebraska, sheriff's office. Kofoed testified in Allen's trial about diagramming the crime scene at 40th and Blondo Streets. Allen asserts, quite generically, that based on Kofoed's involvement in the investigation, any forensic evidence in the case, such as fingerprints and ballistics information, has been rendered unreliable. An evidentiary hearing is not required when a motion for postconviction relief alleges only conclusions of fact or law without supporting facts.[37]

Kofoed's testimony showed that he did not play a major role in the evidence which led the jury to convict Allen. Kofoed was responsible for measuring the distance between items of physical evidence at the crime scene that were located and marked, mostly shell casings. He did not indicate that he collected any evidence, and he did not mention Allen in his testimony. He merely provided a description of the scene and laid foundation for the admission of a photograph of the

---

[36] *State v. Lotter, ante* p. 125, 917 N.W.2d 850 (2018).

[37] *State v. Cook*, 290 Neb. 381, 860 N.W.2d 408 (2015).

police cruiser. We agree with the district court that "[s]imply alleging Kofoed's involvement under these circumstances does not warrant an evidentiary hearing . . . ."[38]

Similarly, Allen's motion and brief discuss a 2012 burglary case in which a crime laboratory technician and her colleagues misidentified a fingerprint. Allen claims, in light of this new information, the evidence of fingerprint analysis used in Allen's trial was unreliable and inadmissible. Here, Allen's broad and generalized allegations do not include any factual support to suggest that his fingerprints were misidentified. In addition, Allen has failed to demonstrate that had the jury been prohibited from considering the fact that nine latent fingerprints of Allen's were found in the van, the jury would not have still convicted him based on eyewitness testimony. We determine Allen's request for an evidentiary hearing based on newly discovered evidence is without merit. We therefore affirm the denial of postconviction relief as to Allen's fourth assignment of error.

## CONCLUSION

For the foregoing reasons, we affirm the order of the district court denying Allen's motion for postconviction relief without an evidentiary hearing.

AFFIRMED.

FREUDENBERG, J., not participating.

---

[38] See *id*.