IN THE NEBRASKA COURT OF APPEALS

MEMORANDUM OPINION AND JUDGMENT ON APPEAL
(Memorandum Web Opinion)

STATE V. COLEMAN

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

FLOYD R. COLEMAN II, APPELLANT.

Filed April 14, 2020.   No. A-19-636.

Appeal from the District Court for Lancaster County: SUSAN I. STRONG, Judge. Affirmed.

Floyd R. Coleman II, pro se.

Douglas J. Peterson, Attorney General, and Erin E. Tangeman for appellee.

MOORE, Chief Judge, and RIEDMANN and WELCH, Judges.

MOORE, Chief Judge.

INTRODUCTION

Floyd R. Coleman II appeals from the order of the district court for Lancaster County, which denied his motion for postconviction relief without an evidentiary hearing. For the reasons set forth herein, we affirm.

BACKGROUND

*Conviction and Sentence.*

In 2017, Coleman was initially charged with one count of first degree sexual assault of a child, a Class IB felony. At a plea hearing, the State filed an amended information, charging him with two counts of first degree sexual assault, both Class II felonies, in violation of Neb. Rev. Stat. § 28-319(1)(c) (Reissue 2016). Pursuant to the plea agreement between Coleman and the State, Coleman was to plead guilty or no contest to the amended information, and, in addition to filing

- 1 -

the amended information, the State agreed not to file any additional charges arising out of the incident in question. As summarized in Coleman's direct appeal heard by this court, the State provided the following factual basis for Coleman's plea:

> On October 24, 2013, J.M.C., a female born in July 2000, was interviewed at the Child Advocacy Center about a sexual assault. She disclosed that an adult male sexually assaulted her, but she did not provide law enforcement with his identity. The sexual assault resulted in J.M.C.'s pregnancy, which she terminated on November 5, 2013. J.M.C.'s child was estimated to be 9 weeks and 2 days old at the time J.M.C. terminated her pregnancy. The child's remains were delivered to the University of Nebraska Medical Center Human DNA Identification Laboratory [(the lab)] for analysis.

> On May 12, 2016, staff at J.M.C.'s group home advised the Lincoln Police Department that the father of J.M.C.'s child, whom she later identified in a photo array as Coleman, had contacted her on Facebook. The Child Advocacy Center interviewed J.M.C. on June 20, 2016 about Coleman's contact with her. J.M.C. reported that she met Coleman through a friend when she was 12 years old. She and Coleman engaged in penile-vaginal intercourse for the first time while she was intoxicated at Coleman's house. J.M.C. and Coleman had five other sexual encounters, at least one of which occurred at Anna Salva's apartment. Coleman was 35 years old at the time of his sexual contact with J.M.C.

> Investigator Robert Norton of the Lincoln Police Department interviewed Coleman on October 3, 2016. Coleman admitted to meeting J.M.C. on an adult dating website and providing her with transportation, but he denied having sexual contact with her. Coleman voluntarily provided Norton with a DNA buccal swab. After comparing DNA from the remains of J.M.C's child to the DNA sample Coleman provided, an analyst at [the lab] concluded that he could not exclude Coleman as the child's father. The analyst could exclude, however, 99 percent of men unrelated to Coleman as the child's father.

See *State v. Coleman*, No. A-17-867, 2018 WL 3303110 at *1 (Neb. App. June 28, 2018) (not designated for permanent publication).

The district court accepted Coleman's plea and found him guilty of the charges set forth in the amended information. The court subsequently sentenced Coleman to imprisonment for a period of 15 to 20 years on each count and ordered the terms of imprisonment to run consecutive to one another, giving him credit for 248 days of time served.

*Direct Appeal.*

On direct appeal, Coleman was represented by new counsel. He asserted that the district court erred by imposing an excessive sentence and that he was denied his right to the effective assistance of counsel. Specifically, he asserted that his trial counsel (1) failed to conduct a meaningful investigation of several witnesses, including J.M.C.'s sister and Salva; (2) failed to investigate J.M.C.'s criminal history, history of dishonesty, or pattern of similar behavior with other adult males for use at sentencing and in plea negotiations; (3) failed to appear at his plea hearing, leading him to plead without understanding the plea agreement's terms; (4) performed deficiently by submitting additions to the presentence investigation report the day before

sentencing; and (5) failed to file several motions and failed to conduct the research requested by and discussed with Coleman.

This court determined that the district court did not abuse its discretion in sentencing Coleman. We found the record on direct appeal insufficient to address Coleman's first claim of ineffective assistance of trial counsel with respect to the alleged failure to conduct a meaningful investigation of witnesses including J.M.C.'s sister and Salva. We found that Coleman's second, third, and fourth claims of ineffective assistance of counsel were affirmatively disproved by the record and that his fifth claim was not sufficiently presented for our review. Accordingly, we affirmed Coleman's convictions and sentences. See *State v. Coleman, supra.*

*Postconviction Proceedings.*

On March 26, 2019, Coleman filed a motion for postconviction relief in the district court, alleging eleven claims of ineffective assistance of trial counsel. Specifically, Coleman alleged that his trial counsel was ineffective for failing to (1) interview and investigate the persons that interviewed J.M.C. at the Child Advocacy Center, (2) investigate the termination of J.M.C.'s pregnancy, (3) interview and investigate Salva, (4) interview and investigate the police officer who released the child's remains to a doctor, (5) interview and investigate the doctor who delivered the child's remains to the lab for analysis, (6) interview and investigate the analyst at the lab who concluded that he could not exclude Coleman as the child's father, (7) obtain independent analysis of the child's remains and the DNA swab of Coleman, (8) quash the amended information because it was not under oath, (9) object to the district court's jurisdiction when the amended information was not filed prior to the court's finding of guilt, (10) depose Salva, and (11) depose J.M.C.'s sister.

On June 13, 2019, the district court entered a written order denying postconviction relief without an evidentiary hearing. The court determined that Coleman's second, seventh, and ninth claims were procedurally barred because they could have been raised on direct appeal. With respect to Coleman's eighth claim, the court determined that he had waived his right to challenge the amended information by entering a plea. The court determined that Coleman had "generally raised" his remaining claims on direct appeal and that they were thus "properly preserved for postconviction review," but it found no merit to the allegations set forth in those claims.

## ASSIGNMENTS OF ERROR

Coleman asserts that the district court erred by failing to grant an evidentiary hearing and by denying his motion for postconviction relief.

## STANDARD OF REVIEW

In appeals from postconviction proceedings, an appellate court reviews de novo a determination that the defendant failed to allege sufficient facts to demonstrate a violation of his or her constitutional rights or that the record and files affirmatively show that the defendant is entitled to no relief. *State v. Torres*, 304 Neb. 753, 936 N.W.2d 730 (2020).

Whether a claim raised in a postconviction proceeding is procedurally barred is a question of law which is reviewed independently of the lower court's ruling. *State v. Mata*, 304 Neb. 326, 934 N.W.2d 475 (2019).

ANALYSIS

*Postconviction Relief.*

Before addressing Coleman's specific arguments on appeal, we set forth the general principles relevant to postconviction actions asserting claims of ineffective assistance of counsel. Postconviction relief is a very narrow category of relief, available only to remedy prejudicial constitutional violations that render the judgment void or voidable. *State v. Beehn*, 303 Neb. 172, 927 N.W.2d 793 (2019). On appeal from the denial of postconviction relief without an evidentiary hearing, the question is not whether the movant was entitled to relief by having made the requisite showing. *State v. Henderson*, 301 Neb. 633, 920 N.W.2d 246 (2018). Instead, it must be determined whether the allegations were sufficient to grant an evidentiary hearing. *Id.*

The allegations in a motion for postconviction relief must be sufficiently specific for the district court to make a preliminary determination as to whether an evidentiary hearing is justified. *Id.* In a proceeding under the Nebraska Postconviction Act, the application is required to allege facts which, if proved, constitute a violation or infringement of constitutional rights, and the pleading of mere conclusions of fact or of law is not sufficient to require the court to grant an evidentiary hearing. *State v. Henderson, supra.* A postconviction evidentiary hearing must be granted when the facts alleged, if proved, would justify relief, or when a factual dispute arises as to whether a constitutional right is being denied. *Id.*

Generally, a voluntary guilty plea or plea of no contest waives all defenses to a criminal charge. *State v. Privett*, 303 Neb. 404, 929 N.W.2d 505 (2019). Thus, when a defendant pleads guilty or no contest, he or she is limited to challenging whether the plea was understandingly and voluntarily made and whether it was the result of ineffective assistance of counsel. *Id.* In a postconviction proceeding brought by a defendant convicted because of a guilty plea or a plea of no contest, a court will consider an allegation that the plea was the result of ineffective assistance of counsel. *Id.*

Here, Coleman alleges that the district court erred in failing to grant an evidentiary hearing on each of the 11 claims for ineffective assistance of trial counsel raised in his motion for postconviction relief. Generally, to prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Assad*, 304 Neb. 979, 938 N.W.2d 297 (2020). A court may address the two prongs of this test, deficient performance and prejudice, in either order. *State v. Henderson, supra.*

In order to establish a right to postconviction relief based on a claim of ineffective assistance of counsel, the defendant has the burden first to show that counsel's performance was deficient; that is, counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law in the area. *Id.* In determining whether trial counsel's performance was deficient, courts give counsel's acts a strong presumption of reasonableness. *Id.* An appellate court must assess trial counsel's performance from counsel's perspective when counsel provided the assistance. *Id.* When reviewing claims of ineffective assistance, an appellate court will not second-guess trial counsel's reasonable strategic decisions. *Id.*

When a conviction is based upon a guilty or no contest plea, the prejudice requirement for an ineffective assistance of counsel claim is satisfied if the defendant shows a reasonable probability that but for the errors of counsel, the defendant would have insisted on going to trial rather than pleading guilty or no contest. *State v. Barrera-Garrido*, 296 Neb. 647, 895 N.W.2d 661 (2017).

Using these principles, we address Coleman's arguments on appeal.

*Claims Procedurally Barred.*

When a defendant's trial counsel is different from his or her appellate counsel, all issues of ineffective assistance of trial counsel that are known to the defendant or are apparent from the record must be raised on direct appeal. *State v. McGuire*, 299 Neb. 762, 910 N.W.2d 144 (2018). If the issues are not raised, they are procedurally barred. *Id.* Coleman's first, second, and fourth through ninth claims pertaining to trial counsel are procedurally barred. He had new counsel on direct appeal and did not raise these eight claims of ineffective assistance of trial counsel at that time. Accordingly, these claims are now procedurally barred.

*Claims Preserved on Direct Appeal.*

In the 3d, 10th, and 11th claims of Coleman's postconviction motion, he asserted that his trial counsel was ineffective for failing to interview and investigate Salva and depose J.M.C.'s sister and Salva. In his motion he alleged that J.M.C.'s sister and Salva would have offered testimony contradicting certain testimony by J.M.C. While Coleman properly preserved these three claims on direct appeal, he cannot show that he was prejudiced by trial counsel's failure to depose or investigate these two witnesses.

As noted above, in the context of a plea-based conviction, to show prejudice with respect to an ineffective assistance of counsel claim, a defendant must show a reasonable probability that but for the errors of counsel, the defendant would have insisted on going to trial rather than pleading guilty or no contest. See *State v. Barrera-Garrido, supra*. In determining the prejudice component of alleged ineffective assistance of counsel in a plea context, the likelihood of the defense's success had the defendant gone to trial should be considered along with other factors, such as the likely penalties the defendant would have faced if convicted at trial, the relative benefit of the plea bargain, and the strength of the State's case. *State v. Haynes*, 299 Neb. 249, 908 N.W.2d 40 (2018), *disapproved on other grounds, State v. Allen*, 301 Neb. 560, 919 N.W.2d 500 (2018). In a motion for postconviction relief, self-serving declarations that fail to allege specific facts that will be presented in an evidentiary hearing will not be sufficient on their own to raise a question of prejudice in an allegation of ineffective assistance of counsel. *Id.* A motion for postconviction relief seeking to set aside a conviction pursuant to a plea on the grounds that it was the result of ineffective assistance of counsel must allege objective facts that raise a question of whether a rational defendant would have insisted on going to trial. *Id.*

Based on the potential testimony of J.M.C.'s sister and Salva set forth in his postconviction motion, Coleman cannot establish that he would have insisted on going to trial. Coleman obtained a substantial benefit from the plea agreement in this case. Pursuant to that agreement, the State reduced the original Class IB felony charge to two Class II felony charges and agreed not to file any additional charges. According to the factual basis provided for Coleman's plea, J.M.C. met

Coleman when she was 12 years old, and they engaged in penile-vaginal intercourse on six occasions. Coleman was 35 years old at the time of their sexual contact. J.M.C. was 13 years old when she was interviewed at the Child Advocacy Center. Clearly, Coleman could have been charged with a total of six Class IB felonies. And, the State had a strong case against him, given that J.M.C.'s allegations were corroborated by DNA evidence. Coleman has not shown a reasonable probability that he would have insisted on going to trial but for his trial counsel's alleged failure to interview Salva and J.M.C's sister. Because Coleman is unable to show prejudice as a result of the alleged deficiencies of his trial counsel, the district court did not err in denying Coleman's motion without an evidentiary hearing.

CONCLUSION

The district court did not err in denying Coleman's motion for postconviction relief without an evidentiary hearing.

AFFIRMED.