IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


STATE V. OSBORN


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


STATE OF NEBRASKA, APPELLEE,

V.

DANIEL A.J. OSBORN, APPELLANT.


Filed February 16, 2021.    No. A-20-487.


Appeal from the District Court for Dodge County: GEOFFREY C. HALL, Judge. Affirmed.

Kenneth Jacobs, of Jacobs Alexander Law, for appellant.

Douglas J. Peterson, Attorney General, and Siobhan E. Duffy for appellee.


PIRTLE, Chief Judge, and MOORE and RIEDMANN, Judges.

MOORE, Judge.

## I. INTRODUCTION

Following Daniel A.J. Osborn's motion for postconviction relief, the district court for Dodge County granted his motion in the form of a new direct appeal. Pursuant to that order, Osborn has filed this direct appeal of his plea-based convictions of two counts of incest with a minor. On appeal, Osborn claims that he received ineffective assistance of trial counsel and that his sentences were excessive. We affirm.

## II. BACKGROUND

On September 16, 2019, the State filed a complaint in the county court, charging Osborn with two counts of incest with a minor on certain dates, both Class IIA felonies, and two counts of child abuse (on the same dates as the incest charges), both Class IIIA felonies. On November 13, the State filed an information in the district court, only charging Osborn with the two counts of incest with a minor. In exchange for Osborn's pleas of no contest to the information, the State did

- 1 -

not file the two additional charges (the child abuse counts) and did not seek to file additional charges based on its investigations. In reciting the plea agreement for the district court, Osborn's attorney also stated that "[t]here will be a [presentence investigation (PSI)] conducted, no objection to psychosexual evaluation, but no other agreement regarding sentencing." The State also noted that Osborn was aware he would have to register as a sex offender. Osborn confirmed that this was his understanding of the plea agreement.

Upon the district court's inquiry, Osborn affirmed that he had had enough time to discuss the matter with his attorney, who had answered all of his questions, and that he was satisfied with his attorney's work. Osborn also affirmed his understanding that the court was in charge of sentencing him and could consider the fact that charges had been dropped. He also affirmed his understanding of the possible sentences and that they could be imposed either concurrently or consecutively. He again affirmed his understanding that he would need to register as a sex offender, but when the court asked if he understood that failure to comply with registration requirements would be a new felony, he stated, "I do now." The court then directed him to go over that requirement with his attorney before sentencing.

Before accepting Osborn's pleas, the district court informed him of the various consequences of his pleas and the rights he would be waiving by pleading, and Osborn indicated his understanding of the court's advisements. Osborn also affirmed that no one had made any threat, used any force, or held out any promise, other than the plea agreement, to get him to waive these rights and enter pleas of no contest; that he had no questions about his rights; that he had had an opportunity to discuss his rights with his attorney; and that he was waiving his rights freely, voluntarily, knowingly, and intelligently. Finally, Osborn confirmed his understanding of the court's advisement of what the State would have to prove at trial in order to convict him of the counts charged in the information.

According to the factual basis provided by the State, Osborn sexually penetrated the victim "with vaginal intercourse" throughout July 2019 and again on or about August 24, 2019. The victim was born in June 2002 and was 17 "during both occasions." Osborn was born in June 1970, is the victim's biological father, and was aware of this biological relationship.

Osborn's attorney expressed his belief that Osborn's pleas of no contest were consistent with the law and the facts of the case and that Osborn was making his pleas freely, voluntarily, knowingly, and intelligently. He knew of no reason why the district court should not accept the pleas. Osborn then informed the court that he still wished to plead no contest. The court accepted Osborn's no contest pleas and found him guilty of the charges in the information.

A PSI was prepared, and the district court subsequently sentenced Osborn to 19 to 20 years' imprisonment on each count of incest with a minor with the sentences to run consecutively. The court gave Osborn credit for 140 days already served.

Following a postconviction motion in which Osborn alleged that his trial counsel was ineffective in failing to file a direct appeal, Osborn was granted relief in the form of a new direct appeal. This appeal followed. Osborn is represented on appeal by different counsel than represented him during his plea and sentencing.

## III. ASSIGNMENTS OF ERROR

Osborn asserts that the district court abused its discretion by imposing an excessive sentence. He also asserts that he received ineffective assistance of counsel because his trial counsel (1) only met with Osborn two times prior to allowing him to enter a plea to the information; (2) allowed him to enter a plea without previously reviewing the discovery, including written reports and video interviews with Osborn; (3) told Osborn prior to entering a plea that he would receive a sentence of 2 to 3 years and had counsel not stated this, Osborn would not have pled no contest; (4) failed to seek out or review evidence that could be potentially exculpatory or mitigate Osborn's actions, including messages on his phone; (5) failed to explain to Osborn what a deposition consists of and failed to depose any witnesses; (6) failed to review the PSI with Osborn prior to proceeding with sentencing; and (7) failed to argue during sentencing that Osborn was a low risk to reoffend based on the presentence investigation evaluations and the psychosexual evaluation.

## IV. STANDARD OF REVIEW

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Clausen*, 307 Neb. 968, 951 N.W.2d 764 (2020). An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *State v. Senteney*, 307 Neb. 702, 950 N.W.2d 585 (2020).

Whether a claim of ineffective assistance of trial counsel can be determined on direct appeal presents a question of law, which turns upon the sufficiency of the record to address the claim without an evidentiary hearing or whether the claim rests solely on the interpretation of a statute or constitutional requirement. *State v. Collins*, 307 Neb. 581, 950 N.W.2d 89 (2020). An appellate court determines as a matter of law whether the record conclusively shows that (1) a defense counsel's performance was deficient or (2) a defendant was or was not prejudiced by a defense counsel's alleged deficient performance. *Id.*

## V. ANALYSIS

### 1. Excessive Sentence

Osborn was convicted of two counts of incest with a minor, both Class IIA felonies, and sentenced to consecutive terms of imprisonment of 19 to 20 years. See Neb. Rev. Stat. § 28-703 (Reissue 2016). Class IIA felonies are punishable by up to 20 years' imprisonment. See Neb. Rev. Stat. § 28-105 (Cum. Supp. 2020). Osborn's sentences were within the statutory limits.

Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether a sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed. *State v. Stack*, 307 Neb. 773, 950 N.W.2d 611 (2020). In determining a sentence to be imposed, relevant factors customarily considered and applied are the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime.

*Id.* However, the sentencing court is not limited to any mathematically applied set of factors, but the appropriateness of the sentence is necessarily a subjective judgment that includes the sentencing judge's observations of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *State v. Gray*, 307 Neb. 418, 949 N.W.2d 320 (2020).

Osborn argues that the district court abused its discretion in not considering many of the factors set forth above. He argues further that in looking at the facts and circumstances surrounding his crimes and his demeanor and attitude at the time of sentencing, the court did not impose appropriate sentences.

Osborn was 41 years old at the time he was interviewed for the PSI. He completed school through the 11th grade and was unemployed at the time of his interview due to his incarceration. He was employed at a dairy prior to his arrest. Osborn's minimal prior criminal history consists only of a second offense driving while suspended and failure to appear, both in Kansas and listed as "[d]isposition [u]known" on the PSI; he has never served a term of supervision or incarceration. On the Level of Service/Case Management Inventory, Osborn scored in the overall medium low risk to reoffend with very high or high risk scores in the family/marital and leisure/recreation domains and very low to medium risk scores in the other domains. He scored as a moderate-low risk to reoffend in crimes that are sexual in nature on the Vermont Assessment for Sex Offender Risk assessment. He completed a psychosexual evaluation but that evaluation was completed after his interview by probation and was not included in the PSI.

At the sentencing hearing, the district court indicated that it had reviewed the PSI as well as the psychosexual evaluation report. Upon the court's inquiry, Osborn's attorney confirmed that he had had an opportunity to review both documents and discuss them with Osborn. Neither the State nor Osborn had any additions, corrections, or changes to either document. The State asked the court to impose the maximum sentence and to consider having Osborn follow the terms of the psychosexual evaluation (which are not found in the record on appeal) during his imprisonment. Osborn's attorney acknowledged that there was no justification for Osborn's crimes but noted his acceptance of responsibility and his cooperation with probation and the evaluation process. He asked the court to make the terms of any imprisonment consistent with both the crimes and the "other aspects" of Osborn reflected in the PSI, including his "very small criminal record." When given the opportunity to address the court, Osborn expressed his regret and the lack of justification for his crimes.

In sentencing Osborn, the district court stated that it had considered the nature and circumstances of the crimes; Osborn's history, character, and condition; and the PSI, psychosexual evaluation, and all statements received. The court stated that it found imprisonment necessary because the risk was substantial that during a period of probation, Osborn would engage in additional criminal conduct; that he was in need of correctional treatment that could be provided most effectively by commitment to a correctional facility; and that a lesser sentence would depreciate the seriousness of the crimes or promote disrespect for the law. Finally, after imposing consecutive sentences of 19 to 20 years' imprisonment, the court stated:

> This behavior is despicable. I cannot imagine the detrimental impact that you have caused this young girl, your own daughter. This sentence is a lengthy sentence as allowed by law.

It's my duty to protect the public. And in this case I am going to maximize, to the extent that I can, your time in the Penitentiary, but I will order that, if possible, the recommendations made in this report be followed, because at some point, you will be out. If you re-offend, I can't help but think that some judge somewhere will give you as lengthy a sentence as possible.

The district court clearly considered the relevant factors, including the information in the PSI and psychosexual evaluation, and the statements made at sentencing. Based upon this record, we can find no abuse of discretion by the court in the sentences imposed.

2. INEFFECTIVE ASSISTANCE OF COUNSEL

Osborn asserts that he received ineffective assistance of trial counsel in several respects. He argues that the record is insufficient to review any of these assignments of error on direct appeal but that they have been stated with enough particularity to preserve them for postconviction review. Osborn is represented on direct appeal by different counsel than trial counsel. When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record. *State v. Devers*, 306 Neb. 429, 945 N.W.2d 470 (2020). Once issues of trial counsel's ineffective performance are properly raised, the appellate court will determine whether the record on appeal is sufficient to review the merits of the ineffective performance claims. *Id.*

When a claim of ineffective assistance of trial counsel is raised in a direct appeal, the appellant is not required to allege prejudice; however, an appellant must make specific allegations of the conduct that he or she claims constitutes deficient performance by trial counsel. *Id.* General allegations that trial counsel performed deficiently or that trial counsel was ineffective are insufficient to raise an ineffective assistance claim on direct appeal. *State v. Weathers*, 304 Neb. 402, 935 N.W.2d 185 (2019). In order to know whether the record is insufficient to address assertions on direct appeal that trial counsel was ineffective, appellate counsel must assign and argue deficiency with enough particularity (1) for an appellate court to make a determination of whether the claim can be decided upon the trial record and (2) for a district court later reviewing a petition for postconviction relief to be able to recognize whether the claim was brought before the appellate court. *State v. Devers, supra*. An ineffective assistance of counsel claim made on direct appeal can be found to be without merit if the record establishes that trial counsel's performance was not deficient or that the appellant could not establish prejudice. *State v. Weathers, supra*.

To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Clausen*, 307 Neb. 968, 951 N.W.2d 764 (2020). In a plea context, deficiency depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases. *State v. Blaha*, 303 Neb. 415, 929 N.W.2d 494 (2019). The prejudice requirement in a plea context is satisfied if the defendant shows a reasonable probability that but

for the errors of counsel, the defendant would have insisted on going to trial rather than pleading guilty. *State v. Haynes*, 299 Neb. 249, 908 N.W.2d 40 (2018), *disapproved on other grounds, State v. Allen*, 301 Neb. 560, 919 N.W.2d 500 (2018). A reasonable probability is a probability sufficient to undermine confidence in the outcome. *State v. Collins*, 307 Neb. 581, 950 N.W.2d 89 (2020). In determining the prejudice component of alleged ineffective assistance of counsel in a plea context, the likelihood of the defense's success had the defendant gone to trial should be considered along with other factors, such as the likely penalties the defendant would have faced if convicted at trial, the relative benefit of the plea bargain, and the strength of the State's case. *State v. Haynes, supra*.

### (a) Failure to Meet More Than Twice

Osborn claims that his trial counsel was ineffective in meeting with him only two times prior to allowing him to enter a plea.

This claim is refuted by the record. When asked at the plea hearing whether he had enough time to discuss the matter with his attorney, whether his attorney had answered all of his questions, and whether he was satisfied with his attorney's work and believed he knew what he was doing, Osborn replied affirmatively. Osborn also affirmed that he had had an opportunity to discuss his rights with his attorney. See *State v. Vanderpool*, 286 Neb. 111, 835 N.W.2d 52 (2013) (allegations of ineffective assistance which are affirmatively refuted by defendant's assurances to sentencing court do not constitute basis for postconviction relief). This assigned error fails.

### (b) Failure to Review Discovery

Next, Osborn claims his trial counsel was ineffective for allowing Osborn to enter a plea without previously reviewing the discovery, including written reports and video interviews with him. Osborn argues that it was "deficient practice by trial counsel not to review said evidence with [him]" and that had his counsel done so, there is a reasonable probability that he would have insisted on going to trial rather than pleading no contest. The record on direct appeal is insufficient to address what evidence trial counsel reviewed with Osborn prior to the plea proceedings, but this assignment of error is stated with sufficient particularity to preserve it for postconviction review.

### (c) Sentencing Promise

Osborn asserts that he received ineffective assistance because his trial counsel told him prior to entering a plea that he would receive a sentence of 2 to 3 years. Osborn asserts that had counsel not stated this, he would not have pled no contest.

The record clearly refutes this claim. At the plea hearing, the district court advised Osborn of the possible penalty ranges, including the fact that sentences could be imposed consecutively, and the fact that the court was not bound by the plea agreement and would be the one deciding his sentence. Osborn affirmed his understanding of these advisements. The recitation of the plea agreement specified that there was no agreement as to sentencing, and Osborn confirmed his understanding that the plea agreement was as it had been recited. He also affirmed that no promises had been made to him to get him to waive his rights and enter a plea. Osborn has failed to show deficient performance in this regard. See *State v. Vanderpool, supra*.

(d) Failures With Respect to Evidence

Osborn asserts that he received ineffective assistance because his trial counsel failed to seek out or review evidence that could be potentially exculpatory or mitigate Osborn's actions, including messages on his phone. He argues his attorney failed "to independently investigate specific evidence of [sic] [Osborn's] phone as requested by [Osborn]." Brief for appellant at 17. He explains that he had informed his attorney that there were messages on his phone that would "mitigate and explain how [Osborn] came to have a sexual relationship with his biological child," particularly with respect to any allegations of force or coercion by Osborn. *Id.* He argues that there is a reasonable probability that the evidence that would have been obtained from his phone would have led him to insist on going to trial.

The issue of whether the victim was forced or coerced into participating is not an element of incest with a minor, the crime with which Osborn was charged and to which he pled. See Neb. Rev. Stat § 28-703 (Reissue 2016). Accordingly, any such evidence would have had no bearing on whether Osborn was guilty of incest with a minor. In terms of mitigation, Osborn had the opportunity to speak at sentencing and stated that there was no excuse for what happened. We note, however, that his version of events (that the sexual intercourse was consensual) is found in the police reports contained in the PSI, which was reviewed by the district court. Osborn cannot show prejudice. This assignment of error fails.

(e) Failures With Respect to Depositions

Osborn asserts that he received ineffective assistance because his trial counsel failed to explain to him what a deposition consists of and the fact that he could depose certain witnesses. He also asserts that his attorney was ineffective for failing to depose any witnesses. He argues that had his attorney done these things, there is a reasonable probability that he would have insisted on going to trial. Osborn notes that according to the PSI, law enforcement interviewed "at least three separate witnesses." Brief for appellant at 18. He argues that he may have been "unaware of the amount of witnesses" due to his attorney's failure to review this evidence with him. *Id.*

Other than referencing the fact that police reports show law enforcement interviewed at least three witnesses, Osborn does not specify the names of which witnesses should have been deposed by his trial counsel or provide a description of any testimony they might have provided. The State argues that Osborn has not stated this claim with sufficient particularity either for this court to address it on direct appeal or preserve it for postconviction review and compares the allegations here to situations where an appellant has alleged a failure to call witnesses at trial. See *State v. Lee*, 304 Neb. 252, 934 N.W.2d 145 (2019) (appellate counsel must give on direct appeal names or descriptions of uncalled witnesses forming basis of claim of ineffective assistance; otherwise, potential postconviction court would be unable to identify whether claim based on alleged failure to call particular witness was preserved on direct appeal; failure to call named witness raised with sufficient specificity, claims concerning "adverse witnesses" not been preserved); *State v. Mora*, 298 Neb. 185, 903 N.W.2d 244 (2017) (defendant alleged attorney should have called, as character witnesses, individuals he worked with and friends and relatives who had seen him with victim prior to allegations; defendant's descriptions were too broad and indefinite to raise and preserve his allegations of deficient conduct). See, also, *State v. Mrza*, 302

Neb. 931, 926 N.W.2d 79 (2019) (assignments of error on direct appeal regarding ineffective assistance of trial counsel must specifically allege deficient performance, and appellate court will not scour remainder of brief in search of such specificity). Osborn's assignment of error simply states that his counsel failed to depose "any witnesses." He has not alleged this claim with sufficient particularity.

## (f) Failures With Respect to Sentencing

Finally, Osborn asserts that he received ineffective assistance of counsel because his trial counsel failed to review the PSI with him prior to proceeding with sentencing and because his trial counsel failed to argue during sentencing that Osborn was a low risk to reoffend based on the evaluations found in the PSI and the psychosexual evaluation. With respect to his assertion that his attorney failed to review the PSI with him prior to sentencing, he recognizes that he was aware of the things he told the probation officer. He argues, however, that without reviewing the remaining information in the PSI he would not have known "what is recommended or what the victim impact statement was." Brief for appellant at 19. He argues that had he known that his attorney would fail to review such an important item with him, he would not have pled no contest. As to the alleged failures with respect to his counsel's arguments during sentencing, Osborn points to certain information found in the PSI and argues that his attorney was ineffective for failing to direct the court's attention to this information during sentencing. He also argues that had he known of these deficiencies of his trial counsel, he would have insisted on going to trial.

The record affirmatively refutes this claim. With respect to the first part of the assigned error, Osborn's counsel stated at sentencing he had reviewed the PSI with Osborn. Osborn did not disagree with that assertion at sentencing. As to his counsel's failure to point out certain information in the PSI during argument at sentencing, Osborn cannot show prejudice. The district court indicated that it had reviewed and considered both the PSI and the psychosexual evaluation in sentencing Osborn. These assignments of error fail.

## VI. CONCLUSION

We find no abuse of discretion in the sentences imposed. We affirm Osborn's convictions and sentences. With respect to those claims of ineffective assistance of trial counsel which were adequately pled and for which the record is sufficient to review on direct appeal, the record refutes that Osborn received ineffective assistance from his trial counsel.

AFFIRMED.