Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
06/08/2021 09:11 AM CDT

STATE OF NEBRASKA, APPELLEE, V.
MALIK M. STELLY, APPELLANT.
___ N.W.2d ___

Filed March 12, 2021.    No. S-20-635.

1. **Postconviction: Constitutional Law: Appeal and Error.** In appeals from postconviction proceedings, an appellate court reviews de novo a determination that the defendant failed to allege sufficient facts to demonstrate a violation of his or her constitutional rights or that the record and files affirmatively show that the defendant is entitled to no relief.

2. **Postconviction: Judgments: Appeal and Error.** Whether a claim raised in a postconviction proceeding is procedurally barred is a question of law. When reviewing a question of law, an appellate court reaches a conclusion independent of the lower court's ruling.

3. **Postconviction: Judgments: Proof.** In a postconviction proceeding, an evidentiary hearing is not required when (1) the motion does not contain factual allegations which, if proved, constitute an infringement of the movant's constitutional rights, rendering the judgment void or voidable; (2) the motion alleges only conclusions of fact or law without supporting facts; or (3) the records and files affirmatively show that the defendant is entitled to no relief.

4. **Postconviction: Appeal and Error.** In determining whether a motion for postconviction relief contains factual allegations that, if proved, constitute an infringement of the movant's constitutional rights and whether the records and files affirmatively show the defendant is entitled to no relief, an appellate court considers whether the allegations are procedurally barred.

5. ____: ____. A motion for postconviction relief cannot be used as a substitute for an appeal or to secure a further review of issues already litigated on direct appeal or which were known to the defendant and counsel at the time of the trial and which were capable of being raised, but were not raised, in the defendant's direct appeal.

6. **Appeal and Error.** An alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court.

7. **Postconviction: Effectiveness of Counsel: Appeal and Error.** A motion for postconviction relief asserting ineffective assistance of trial counsel is procedurally barred when (1) the defendant was represented by a different attorney on direct appeal than at trial, (2) an ineffective assistance of trial counsel claim was not brought on direct appeal, and (3) the alleged deficiencies in trial counsel's performance were known to the defendant or apparent from the record.

8. ____: ____: ____. A claim of ineffective assistance of appellate counsel which could not have been raised on direct appeal may be raised on postconviction review.

9. **Trial: Evidence.** There are three components of a true violation under *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963): (1) The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) that evidence must have been suppressed by the State, either willfully or inadvertently; and (3) prejudice must have ensued.

10. **Effectiveness of Counsel: Proof.** In order to establish a right to postconviction relief based on a claim of ineffective assistance of counsel, the defendant has the burden, in accordance with *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), to show that counsel's performance was deficient and that counsel's deficient performance prejudiced the defense in his or her case.

11. **Effectiveness of Counsel: Presumptions: Proof.** The two prongs of the ineffective assistance of counsel test—deficient performance and prejudice—may be addressed in either order, and the entire ineffectiveness analysis is viewed with a strong presumption that counsel's actions were reasonable.

12. **Effectiveness of Counsel: Proof.** To show that counsel's performance was deficient, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law.

13. **Trial: Prosecuting Attorneys: Words and Phrases.** Generally, prosecutorial misconduct encompasses conduct that violates legal or ethical standards for various contexts because the conduct will or may undermine a defendant's right to a fair trial.

14. **Postconviction.** An evidentiary hearing is not required when a motion for postconviction relief alleges only conclusions of fact or law without supporting facts.

Appeal from the District Court for Douglas County: Shelly R. Stratman, Judge. Affirmed.

Malik M. Stelly, pro se.

Douglas J. Peterson, Attorney General, and Austin N. Relph for appellee.

Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Freudenberg, J.

## NATURE OF CASE

The defendant appeals from an order of the district court denying his pro se motion for postconviction relief without an evidentiary hearing. The defendant asserts that the trial record demonstrates the probability that the extraction of information from his cell phone found at the scene of the crime took place before the crime occurred. The defendant concludes that if law enforcement extracted information from his cell phone before the crime, then law enforcement had his cell phone before the crime and had unlawfully searched it before obtaining a warrant. Related to this claim, the defendant asserts that the State committed various acts of prosecutorial misconduct during trial and concealed exculpatory evidence in violation of the prosecution's duty under *Brady v. Maryland*.[1] The allegedly exculpatory evidence the prosecution concealed is the original disc containing the full extraction report, which the defendant believes would show that the extraction occurred before the crime. The defendant asserts that both trial counsel and appellate counsel were ineffective in failing to discover that the State had concealed such exculpatory information that he believes is contained on the disc. We affirm.

## BACKGROUND

Malik M. Stelly was convicted of first degree murder, use of a deadly weapon to commit a felony, and possession of a deadly weapon by a prohibited person.

---

[1] *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).

Trial

The facts underlying Stelly's convictions are set forth in detail in our opinion resolving Stelly's direct appeal.[2] We reiterate those facts from the trial record most pertinent to Stelly's current postconviction appeal.

After the "ShotSpotter" system in Omaha, Nebraska, indicated shots were fired at 2:37 a.m. on January 11, 2017, the victim was found on a residential sidewalk, dead of multiple gunshot wounds to the head. Witnesses described a Chrysler PT Cruiser driving away. One witness described the PT Cruiser as having rust around the wheel wells. Shell casings and two cell phones were found at the scene. An LG cell phone was found in the street about 10 to 15 feet from the victim's body. A ZTE cell phone was found in the victim's pocket.

Later that day, officers obtained a search warrant and extracted data from the LG cell phone found in the street. The data indicated the cell phone belonged to Stelly.

Officers surveilled the apartment complex where Stelly lived, finding a PT Cruiser in the parking lot that was registered to Stelly's friend, Royce White. Pursuant to a search warrant, officers later searched Stelly's apartment and the PT Cruiser.

Stelly's fingerprint was recovered from the interior doorframe of the PT Cruiser, which had damage to the wheel wells on the driver's side. Evidence adduced at trial showed that White had loaned Stelly the PT Cruiser before the shooting, because Stelly's car had been in an accident.

A hat was seized from Stelly's apartment that, due to timestamped photographs on Stelly's social media profile, officers believed Stelly had worn the day of the crime. Blood found on the hat was tested, and the victim's DNA was not excluded as the major contributor to the DNA contained therein, with a probability of that DNA's coming from someone other than the victim being 1 in 47.4 nonillion. Stelly was not excluded as the major contributor to the DNA collected from inside the

---

[2] *State v. Stelly*, 304 Neb. 33, 932 N.W.2d 857 (2019).

headband of the hat, and the probability of that DNA's having come from someone other than Stelly was 1 in 1.01 octillion. DNA found on the LG cell phone was tested, and Stelly was not excluded as the major contributor, with a probability of that DNA's having come from someone other than Stelly at 1 in 4.12 sextillion.

The district court denied Stelly's pretrial motion to suppress evidence obtained from searching the contents of the LG cell phone. Trial counsel had argued that the warrant, and the affidavit in support thereof, were insufficient because they identified the ZTE cell phone found in the victim's pocket rather than the LG cell phone. At the suppression hearing, the warrant and attached affidavit were received into evidence.

The affidavit recited the facts of the shooting and that an LG model cell phone was found in the street about 10 feet from the victim. The affidavit stated it was unknown who the LG cell phone belonged to and that an examination of the electronic data contained in the cell phone would be a benefit to the investigation. The affidavit also stated that the electronic device to be searched was in the lawful possession of the Omaha Police Department and was "found in the street at the scene of a homicide and seized as evidence."

But elsewhere in the affidavit, the device to be searched was identified as the ZTE cell phone. Likewise, the warrant that was issued identified the ZTE cell phone as the device to be searched. The warrant was issued January 11, 2017, after which the LG cell phone found in the street was searched.

The officer who swore the affidavit testified at the suppression hearing that he noticed after the search that he had made an error when listing the ZTE cell phone. The officer applied for and obtained another search warrant referencing only the LG cell phone.

Officer Ryan Hinsley testified at the motion to suppress hearing that the cell phone review began early in the morning on January 11, 2017, in order to identify the owner of the LG cell phone found at the scene of the crime. Officer Thomas

Queen testified that as part of the police department's evidence processing protocols, the cell phone was "hooked up" to a "Cellebrite" machine in order to unlock the cell phone and look at the identification data. Queen did not know exactly when this occurred, but it was some hours after he was called in to work, subsequent to the crime.

Officer Nicholas Herfordt testified during the motion to suppress hearing that the LG cell phone was booked into property at 10:21 a.m. on January 11, 2017, and that he retrieved it at 2:11 p.m. that same day, after a search warrant had been obtained. Herfordt testified that he began the process of extracting all of the raw data from the LG cell phone at 6:49 p.m. on January 11 and that the extraction was completed at 6:58 p.m.

The district court held that the inadvertent defect in the original search warrant was cured by reference to the affidavit used to obtain the warrant, which was attached thereto.

At trial, the State presented photographs of Stelly that were taken with his cell phone and posted on a social media website, one of which showed Stelly wearing the hat that Stelly's and the victim's blood were later found on. The photographs were posted at approximately 8 p.m. on January 10, 2017.

Exhibit 590 is one such photograph, attached to which is an "Upload Ip" from the social media's business records showing the photograph was uploaded on January 11, 2017, at "2:06:24 UTC."

Exhibit 591 is a photograph of two bottles of cognac champagne Stelly appeared to be holding in the prior photograph. It was uploaded to the social media site, according to its business records, at "1:50:43 UTC" the same date.

The State also presented exhibit 589, a picture of a puppy and conversations on January 8, 2017, on social media regarding Stelly's potential purchase of the puppy, in the course of which Stelly mentions driving a PT Cruiser.

Several witnesses testified that the term "UTC" stands for coordinated universal time, which is approximately 5 or 6 hours before central time.

The State also presented cell phone records indicating that from approximately 8:15 p.m. until just before 11 p.m. on January 10, 2017, Stelly's cell phone was near White's house and the crime scene. Further, between 1:43 and 1:51 a.m. on January 11, Stelly had a text message conversation in which he told someone that he was "bored" and "wanna act bad."

Exhibit 576 contains call records and cell phone location records.

Exhibit 592 is an "Extraction Report" from Cellebrite showing the text messages and the time they were read and sent, which was between 1:43 and 1:51 a.m. on January 11, 2017.

## Direct Appeal

Following his convictions and sentencing, Stelly filed a direct appeal with new counsel. He alleged that the trial court erred in denying his motion to suppress the search of his cell phone and 18 different claims of ineffective assistance of trial counsel.

Regarding the motion to suppress, Stelly argued that the warrant was not particular enough in its description of the cell phone to be searched and that the affidavit did not cure the deficiency. We disagreed, holding that the detailed information in the supporting affidavit, referred to and accompanying the warrant, demonstrated that the reference to the ZTE cell phone was an inadvertent scrivener's error and cured such defect, and that the affidavit and warrant together described with sufficient particularity the item to be searched.

The claims of ineffective assistance of counsel included two claims related to the LG cell phone.

First, Stelly claimed that trial counsel had failed to investigate the source of calls to White's cell phone from two specific telephone numbers which would have revealed that officers called White's cell phone themselves after illegally searching the LG cell phone found near the victim's body without a warrant.

Second, Stelly claimed trial counsel failed to consult with and call as a witness an independent cell phone expert

who, upon analyzing the LG cell phone found near the victim's body, would have testified that the data officers purportedly extracted from the LG cell phone was not in fact present on it and that one or more officers manufactured cell phone evidence. Such expert would also have testified that officers sent and received text messages and voice calls using the LG cell phone, but testified falsely and failed to disclose this fact to trial counsel, the trial court, and the jury.

We held that the trial record affirmatively refuted the first claim. We explained that we had already held in our analysis of the motion to suppress that the search of Stelly's LG cell phone was pursuant to a valid warrant.

We found the trial record insufficient to resolve the second claim with respect to deficient conduct, and we did not decide whether the trial record was sufficient to determine whether Stelly was prejudiced from the alleged deficient conduct.

## Motion for Postconviction Relief

In an amended motion for postconviction relief filed on January 9, 2020, Stelly presented three alleged grounds for vacating his convictions.

"Ground 1" was the allegation that his convictions were obtained in violation of due process, because evidence was admitted that was inadmissible due to the illegality of the searches and seizures which produced the evidence. This allegedly unlawfully obtained evidence included data from Stelly's cell phone, which evidence Stelly claimed was extracted before the crime, at a time when there was no probable cause to do so, and was not found at the scene of the crime, but, rather, was in the possession of law enforcement before the crime. Stelly asserted that the search of the cell phone and other places was warrantless because the sworn affidavits in support of the warrants were issued after the searches.

"Ground 2" was the allegation that Stelly's convictions were obtained as a result of prosecutorial misconduct. This prosecutorial misconduct allegedly included staged, perjured, and

false testimony. In this regard, Stelly again alleged that the data from his cell phone was extracted before the crime, which he asserted rendered exhibits 590 through 592 inadmissible as a search and seizure without probable cause or a warrant.

Stelly did not allege newly discovered evidence but surmised the time of extraction based on the testimony at the pretrial hearing on his trial counsel's motion to suppress. Specifically, Stelly pointed out Herfordt's testimony that data extraction was conducted at 6:49 to 6:58 p.m. on January 11, 2017. Stelly asserted this testimony was inconsistent with the testimony of Hinsley that the cell phone review began early in the morning on January 11, 2017.

Stelly also claimed that the "metadata" contained in exhibits 590 and 591 demonstrated that the printouts were created at 1:50 and 2:06 a.m. on January 11, 2017, before the crime occurred. Stelly asserted, based on the "World Book," that "Universal Time Coordinate is not a time zone." He did not explain, however, how precisely this connected to his argument that the times of 1:50 and 2:06 a.m. were when the data extraction of the cell phone took place rather than when he posted onto social media.

"Ground 3" contained allegations of ineffective assistance of both trial counsel and appellate counsel. For trial counsel, Stelly elaborated that "[f]or the following reasons set forth in Ground 1 and Ground 2 trial counsel was ineffective based on the mishandling of the fourth amendment violation claim," which ineffective assistance led to the admission of exhibits 576 and 589 through 592. Among other things, Stelly argued that through discovery, as well as through evidence presented at the pretrial hearings and at trial, trial counsel should have realized and argued that the data from his cell phone was extracted before the crime occurred. In this regard, he reiterated his claim that the "metadata" from exhibits 590 and 591 show those printouts were "created" January 11, 2017, at 1:50 and 2:06 a.m. before the crime occurred, proving the cell phone was not found at the crime scene.

As to his claims against appellate counsel, Stelly incorporated all prior allegations, including those against trial counsel, and explained:

> Through the evidence provided to the trial counsel and appeallate [sic] counsel through the discovery process, trial counsel and appeallate [sic] counsel should have argued (Ev. #1) data was extracted before this crime occurred, and Exhibits 2, 3, 5, 6, 7, 8, and 13 are affidavits and applications for issuance of a search warrant, not signed search warrants from a judge (Referencing Ground 1 section 1).

Again, Stelly repeated his claim that the "metadata" from exhibits 590 and 591 show that the printouts were "created" January 11, 2017, at 1:50 and 2:06 a.m. before the crime occurred, proving the cell phone was not found at the crime scene. Stelly concluded that "[t]he mishandling of the defendants fourth amendment violation claim amounts to the defendant being prejudiced" and that both trial counsel's and appellate counsel's performance were deficient and their deficient performance prejudiced him by depriving him of a fair trial. He asserted that but for the ineffective assistance, no reasonable fact finder would have found him guilty of the underlying offenses.

On April 22 and July 2, 2020, Stelly filed additional documents setting forth additional information which he asked the court to take into consideration, along with the verified motion for postconviction relief. It is unclear if the court did so. Stelly seemed to reiterate in these filings that the cell phone was not found at the crime scene, because the data from the cell phone was extracted before the crime. Again, in making the argument that the data was extracted before the crime, Stelly relied on testimony at the motion to suppress hearing and at trial rather than on any newly discovered evidence. He theorized that, because the time of extraction proves the cell phone was not at the scene of the crime, the affidavit asserting the cell phone was found near the victim at the crime scene contained

a knowingly false statement and was therefore invalid. The April 22 filing does not mention ineffective assistance of counsel, but the July 2 filing asserts that trial counsel and appellate counsel should have argued that statements in the affidavits that the cell phone was found near the victim at the crime scene were false and recklessly made. This allegedly prejudiced Stelly by allowing the introduction of inadmissible evidence, such as exhibits 589 through 591.

### Order Denying Postconviction Relief

On August 13, 2020, the district court, without an evidentiary hearing, denied the amended motion for postconviction relief. The court explained that the claims relating to violations of due process rights and prosecutorial misconduct were procedurally barred because they could have been brought on direct appeal.

The court found that all Stelly's allegations of ineffective assistance of appellate counsel relate to the same issues addressed within the ineffective assistance of trial counsel claims and that all such claims were either procedurally barred or affirmatively refuted by the trial record. Citing to *State v. Sellers*,[3] the postconviction court concluded that Stelly's ineffectiveness claim regarding trial counsel's and appellate counsel's failure to discover exculpatory evidence was difficult to decipher, but failed because it set forth no more than conclusory allegations with regard to the lack of investigation and did not specifically identify any exculpatory evidence the investigation would have procured. The court also noted that much of Stelly's argument was based on a misunderstanding of the evidence at trial. For instance, the court elaborated as to exhibits 590 and 591 that the times of 1:50 and 2:06 a.m. were when the photographs were downloaded to social media rather than when they were downloaded by law enforcement.

After the court's order denying postconviction relief, Stelly moved to compel the Douglas County Attorney who

---

[3] *State v. Sellers*, 290 Neb. 18, 858 N.W.2d 577 (2015).

handled his prosecution to surrender the entire case file. Stelly specifically requested police reports and all copies of affidavits and search warrants. He made no reference in the motion to a disc containing an extraction report for his cell phone. The court denied the motion.

On September 2, 2020, Stelly appealed from the district court's order denying postconviction relief.

## ASSIGNMENTS OF ERROR

Stelly assigns as error that (1) the State committed a *Brady* violation by failing to disclose the disc containing the extraction report for his cell phone information, which allegedly would demonstrate that the cell site location, call detail records, text history, social media posts, and pictures entered into evidence through exhibits 566, 576, and 590 through 592 were fraudulently misrepresented as being extracted from the device after the crime; (2) trial counsel and appellate counsel were ineffective in failing to raise this alleged *Brady* violation, which they would have discovered had they demanded a copy of the disc to resolve the discrepancy between witness testimony that the extraction occurred a little before 7 p.m. on January 11, 2017, and witness testimony that the extraction occurred in the early morning hours of January 11; and (3) there was plain error committed during trial through the prosecutor's failure to correct its witnesses' false testimony pertaining to the dates and times of exhibits 590 through 592.

## STANDARD OF REVIEW

[1] In appeals from postconviction proceedings, an appellate court reviews de novo a determination that the defendant failed to allege sufficient facts to demonstrate a violation of his or her constitutional rights or that the record and files affirmatively show that the defendant is entitled to no relief.[4]

[2] Whether a claim raised in a postconviction proceeding is procedurally barred is a question of law. When reviewing

---

[4] *State v. Parnell*, 305 Neb. 932, 943 N.W.2d 678 (2020).

a question of law, an appellate court reaches a conclusion independent of the lower court's ruling.[5]

## ANALYSIS

[3] Stelly asserts that the district court erred in denying his motion for postconviction relief without an evidentiary hearing. The Nebraska Postconviction Act provides:

> A prisoner in custody under sentence and claiming a right to be released on the ground that there was such a denial or infringement of the rights of the prisoner as to render the judgment void or voidable under the Constitution of this state or the Constitution of the United States, may file a verified motion, in the court which imposed such sentence, stating the grounds relied upon and asking the court to vacate or set aside the sentence.
>
> . . . Unless the motion and the files and records of the case show to the satisfaction of the court that the prisoner is entitled to no relief, the court shall cause notice thereof to be served on the county attorney [and] grant a prompt hearing thereon . . . .[6]

In a postconviction proceeding, an evidentiary hearing is not required when (1) the motion does not contain factual allegations which, if proved, constitute an infringement of the movant's constitutional rights, rendering the judgment void or voidable; (2) the motion alleges only conclusions of fact or law without supporting facts;[7] or (3) the records and files affirmatively show that the defendant is entitled to no relief.[8]

[4,5] In determining whether a motion for postconviction relief contains factual allegations that, if proved, constitute an infringement of the movant's constitutional rights and whether the records and files affirmatively show the defendant is entitled to no relief, we consider whether the allegations

---

[5] *State v. Harris*, 267 Neb. 771, 677 N.W.2d 147 (2004).

[6] Neb. Rev. Stat. § 29-3001 (Reissue 2016).

[7] See *State v. Allen*, 301 Neb. 560, 919 N.W.2d 500 (2018).

[8] See *State v. Parnell, supra* note 4.

are procedurally barred.[9] Generally, a motion for postconviction relief cannot be used as a substitute for an appeal or to secure a further review of issues already litigated on direct appeal or which were known to the defendant and counsel at the time of the trial and which were capable of being raised, but were not raised, in the defendant's direct appeal.[10]

[6] While Stelly makes many arguments in his brief, an alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court.[11] To the extent Stelly makes arguments not specifically assigned as error, we do not address them.

## Ineffective Assistance

Stelly argues in relation to his second assignment of error that both trial counsel and appellate counsel violated his Sixth Amendment rights by "not addressing the Brady violation of the defense not being given the disc or a copy of the disc containing the Cellebrite extraction report for the device."[12] This disc allegedly would have demonstrated that the cell site location, call detail records, text history, social media posts, and pictures entered into evidence through exhibits 566, 576, and 590 through 592 were fraudulently misrepresented at trial as being extracted from the device after the crime, when in fact they were extracted before the crime. Stelly alleges that both trial counsel and appellate counsel would have discovered this had they demanded a copy of the disc to resolve what Stelly considers to be a discrepancy between witness testimony that the extraction occurred a little before 7 p.m. on January 11, 2017, and witness testimony that the extraction occurred in the early morning hours of January 11. Stelly infers the

---

[9] See *id.*

[10] See *id.*

[11] *State v. Filholm*, 287 Neb. 763, 848 N.W.2d 571 (2014).

[12] Brief for appellant at 12.

disc would show the data was extracted from the cell phone before the crime, based on this allegedly conflicting testimony and his reading of exhibits 590 through 592. Stelly concludes a disc showing the data was extracted before the crime would be exculpatory, because it would negate a nexus between the crime alleged and the item to be searched and would have invalidated the search warrant, which would have made most of the evidence against him inadmissible under the exclusionary doctrine.

Stelly's claim against trial counsel was not brought on direct appeal. While there is a common theme surrounding Stelly's cell phone and law enforcement tampering, we read the postconviction allegation against trial counsel to be distinct from those brought on direct appeal. Stelly alleged on direct appeal that trial counsel had failed to investigate the source of calls to White's cell phone from two specific telephone numbers that would have revealed officers called White's cell phone themselves after a warrantless search of the LG cell phone found at the scene of the crime, a claim which we found to be without merit. Stelly also asserted on direct appeal that trial counsel failed to call as a witness an independent cell phone expert who would have testified that the data the officers purportedly extracted from the LG cell phone was not in fact present and was manufactured, a claim which we did not determine on direct appeal. These claims are distinct from the current allegation that the data from the cell phone was extracted before the crime.

[7] A motion for postconviction relief asserting ineffective assistance of trial counsel is procedurally barred when (1) the defendant was represented by a different attorney on direct appeal than at trial, (2) an ineffective assistance of trial counsel claim was not brought on direct appeal, and (3) the alleged deficiencies in trial counsel's performance were known to the defendant or apparent from the record.[13] Stelly was

---

[13] *State v. Williams*, 295 Neb. 575, 889 N.W.2d 99 (2017).

represented by new counsel on direct appeal. He relies on testimony and exhibits presented at the pretrial hearing and at trial to support his allegations of ineffective assistance, evidence which was known to him and was apparent from the record. And the current allegations of ineffective assistance of trial counsel were not raised on direct appeal. Therefore, Stelly's claim against trial counsel is procedurally barred.

[8] In contrast, this postconviction proceeding was Stelly's first opportunity to assert that his appellate counsel was ineffective. A claim of ineffective assistance of appellate counsel which could not have been raised on direct appeal may be raised on postconviction review.[14] But the district court did not err in denying, without an evidentiary hearing, Stelly's claim for postconviction relief based on the alleged ineffective assistance of appellate counsel.

First, we agree with the State that the claims made in the second assignment of error were not made in Stelly's postconviction motion. The postconviction motion made no reference to a *Brady* violation or to a disc containing the Cellebrite extraction report that either trial counsel or appellate counsel should have obtained. This court will not consider an issue on appeal from the denial of postconviction relief that was not raised in the motion for postconviction relief or passed upon by the postconviction court.[15]

[9-12] Second, we agree with the district court that the record affirmatively refutes Stelly's claim of ineffective assistance of appellate counsel for failing to discover and challenge the alleged *Brady* violation. There are three components of a true *Brady* violation: (1) The evidence at issue must be favorable to the accused, either because it is exculpatory, or because

---

[14] *State v. Sellers, supra* note 3.

[15] See, *State v. Oliveira-Coutinho*, 304 Neb. 147, 933 N.W.2d 825 (2019); *State v. Vela*, 297 Neb. 227, 900 N.W.2d 8 (2017); *State v. Thorpe*, 290 Neb. 149, 858 N.W.2d 880 (2015); *State v. Thomas*, 262 Neb. 138, 629 N.W.2d 503 (2001).

it is impeaching; (2) that evidence must have been suppressed by the State, either willfully or inadvertently; and (3) prejudice must have ensued.[16] In order to establish a right to post-conviction relief based on a claim of ineffective assistance of counsel, the defendant has the burden, in accordance with *Strickland v. Washington*,[17] to show that counsel's performance was deficient and that counsel's deficient performance prejudiced the defense in his or her case.[18] The two prongs of this test—deficient performance and prejudice—may be addressed in either order, and the entire ineffectiveness analysis is viewed with a strong presumption that counsel's actions were reasonable.[19] To show that counsel's performance was deficient, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law.[20]

We find that the record affirmatively refutes Stelly's allegation that appellate counsel was deficient for failing to raise trial counsel's ineffectiveness in failing to discover and challenge at trial the *Brady* violation of concealing the extraction disc. The evidence Stelly points to as raising questions about the time of extraction, which he claims should have alerted trial counsel to the possible *Brady* violation and should have likewise alerted appellate counsel of trial counsel's ineffectiveness, does not in fact indicate the State was concealing exculpatory evidence that it had extracted the data from Stelly's cell phone before the crime.

The trial record demonstrates that, on their face, exhibits 590 through 592 are photographs that show when they were

---

[16] *State v. Starks*, 294 Neb. 361, 883 N.W.2d 310 (2016). See *Brady v. Maryland, supra* note 1.

[17] *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

[18] See *State v. Assad*, 304 Neb. 979, 938 N.W.2d 297 (2020).

[19] See *State v. Oliveira-Coutinho, supra* note 15.

[20] *State v. Assad, supra* note 18.

uploaded onto the social media website and not, as Stelly suggests, when they were printed out. The fact that these photographs were uploaded to social media before the crime does not indicate that law enforcement had possession of Stelly's cell phone and searched it before the crime.

The trial record also affirmatively demonstrates that there is no discrepancy between Herfordt's testimony that the extraction occurred a little before 7 p.m. on January 11, 2017, and Hinsley's testimony that the extraction occurred in the early morning hours of January 11. Hinsley testified during the motion to suppress hearing that the cell phone review began early in the morning on January 11, in order to identify the owner of the LG cell phone found at the scene of the crime. Herfordt testified during the motion to suppress hearing that the LG cell phone was booked into property at 10:21 a.m. on January 11 and that he retrieved it at 2:11 p.m. that same day, after a search warrant had been obtained. Herfordt testified that he began the process of extracting all of the raw data from the LG cell phone at 6:49 p.m. on January 11 and that the extraction was completed at 6:58 p.m.

The record shows that the first extraction was of a more limited nature to identify the owner of the cell phone, while the second extraction was a full search of its contents. And even if the testimonies of Herfordt and Hinsley were inconsistent, both testified that the extractions occurred after the crime. We fail to see how any inconsistency should have led either trial counsel or appellate counsel to believe that the extraction of data from the cell phone occurred before the crime.

The record affirmatively refutes Stelly's allegation that appellate counsel's performance was deficient by failing to suspect and raise the issue of whether the data extraction of the LG cell phone occurred before the crime. The evidence Stelly points to would not give reason for a lawyer with ordinary training and skill in criminal law to believe that such precrime extraction might have occurred.

## Prosecutorial Misconduct

[13] Stelly's arguments pertaining to his first and third assignments of error are that the State committed a *Brady* violation by concealing the disc and committed other acts of prosecutorial misconduct by presenting false testimony that the data was extracted after the crime. Generally, prosecutorial misconduct encompasses conduct that violates legal or ethical standards for various contexts because the conduct will or may undermine a defendant's right to a fair trial.[21]

As pertains to the alleged *Brady* violation, as stated, the postconviction motion made no reference to a *Brady* violation or to a disc containing the Cellebrite extraction report. Thus, we need not address this claim that is being raised for the first time on appeal.

[14] As to both the alleged *Brady* violation and the remaining allegations of prosecutorial misconduct, we agree with the district court that Stelly alleged only conclusions of fact without supporting facts. An evidentiary hearing is not required when a motion for postconviction relief alleges only conclusions of fact or law without supporting facts.[22]

Conclusions of fact that are insufficient to warrant an evidentiary hearing are often broad characterizations without specificity, such as an allegation of "false" testimony,[23] but we have also found a more specific allegation to be a mere conclusion of fact when it appears based on speculation due to the lack of adequate supporting factual allegations.[24] Thus, for instance, in *State v. Allen*,[25] we concluded that the allegation that law enforcement tampered with the evidence was a mere conclusion of fact without supporting facts when it was based on

---

[21] *State v. Nolan*, 292 Neb. 118, 870 N.W.2d 806 (2015).

[22] *State v. Parnell, supra* note 4.

[23] See *State v. Dean*, 264 Neb. 42, 49, 645 N.W.2d 528, 534 (2002).

[24] See, e.g., *State v. Johnson*, 298 Neb. 491, 904 N.W.2d 714 (2017).

[25] *State v. Allen, supra* note 7.

nothing more than the allegation that a former supervisor, who was found to have tampered with evidence in other cases when he was involved in evidence collection,[26] had diagrammed the crime scene, but had not collected any evidence.

There was no allegation that Stelly's claims were based on newly discovered evidence that was not available to him during trial or his direct appeal. Stelly's only support for his conclusory assertions that there was an undisclosed exculpatory disc and that the State presented false testimony is the same evidence relied upon in asserting that both trial counsel and appellate counsel were ineffective. Given that the evidence Stelly relies on does not support an inference that the extraction occurred before the crime, Stelly's allegation of false testimony that the data was extracted after the crime and allegation of an undisclosed disc showing extraction occurred before the crime are nothing more than conclusions of fact without supporting facts. Accordingly, an evidentiary hearing on the claims of prosecutorial misconduct was not required.

## CONCLUSION

We find no merit to Stelly's assignments of error relating to the district court's denial of Stelly's motion for posconviction relief without an evidentiary hearing. The claims were all either procedurally barred, based upon mere conclusions of fact and law without supporting facts, or affirmatively refuted by the trial record. We therefore affirm the judgment of the district court.

Affirmed.

Heavican, C.J., not participating.

---

[26] See *State v. Kofoed*, 283 Neb. 767, 817 N.W.2d 225 (2012).