IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)

STATE V. MCKETHAN

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

TERRAN T. MCKETHAN, APPELLANT.

Filed April 4, 2023.    No. A-22-512.

Appeal from the District Court for Lancaster County: KEVIN R. MCMANAMAN, Judge. Affirmed.

Joseph D. Nigro, Lancaster County Public Defender, and Timothy M. Eppler for appellant.

Douglas J. Peterson, Attorney General, and Teryn Blessin for appellee.

MOORE, RIEDMANN, and BISHOP, Judges.

BISHOP, Judge.

## I. INTRODUCTION

Terran T. McKethan, 43, pled guilty to four counts of first degree sexual assault and one count of attempted child enticement with an electronic communication device. The Lancaster County District Court sentenced him to consecutive sentences of 20 to 25 years' imprisonment on each count. McKethan claims that the district court imposed excessive sentences and that he was denied his right to effective assistance of counsel. We affirm.

## II. BACKGROUND

On October 7, 2021, the State filed an information charging McKethan with counts 1 through 3, "Sexual Assault of a Child, 1st degree with prior," each a Class IB felony, pursuant to Neb. Rev. Stat. § 28-319.01 (Reissue 2016); and count 4, "Generation of Child Pornography - prior," a Class IC felony, pursuant to Neb. Rev. Stat. §§ 28-1463.03 (Cum. Supp.

- 1 -

2020) and 28-1463.04 (Reissue 2016); count 5, "Child Enticement with Electronic Communication Device – prior," a Class IC felony, pursuant to Neb. Rev. Stat. § 28-320.02 (Reissue 2016); and count 6, "Sex Offender Registration Act Violation," a Class IIIA felony, pursuant to Neb. Rev. Stat. § 29-4011 (Reissue 2016).

On May 4, 2022, the State filed an amended information charging McKethan with counts 1 through 4, "Sexual Assault, 1st degree," each a Class II felony, pursuant to Neb. Rev. Stat. § 28-319 (Reissue 2016); and count 5, "Attempted Child Enticement with Electronic Communication Device," a Class II felony, pursuant to Neb. Rev. Stat. §§ 28-201 and 28-320.02 (Reissue 2016).

During a videoconference hearing on May 4, 2022, McKethan, pursuant to a plea agreement, pled guilty to the five counts in the amended information. The factual basis provided by the State was as follows:

First, regarding Count 1, on Tuesday, February 16th, 2021, Investigator Loos with the Lancaster County Sheriff's Office received an intake from Health & Human Services that a minor child with the initials TJ reported she was communicating with the defendant on Snapchat.

She disclosed that approximately three weeks before her 16th birthday that she met the defendant on Snapchat. He posed as a 17-year-old teenager and indicated that if he were -- if she were to have sex with him, he would provide her with marijuana. She ended up meeting up with him. She believed it was in person sometime between December 19th, 2020, and January 22nd, 2021.

When she arrived at the location to meet up with what she believed was a 17-year-old man, the defendant was in the car. She noticed that he looked older than what she anticipated. She did take a . . . a photo of the license plate. The license plate did match to a Chrysler 300, 2008 Sedan . . . registered to Mr. McKethan.

She did get in the car. He indicated that she would not get the marijuana until, quote, the job is done. She then describes being in the vehicle with him and that they had sexual contact, which included fellatio that she had to perform on the defendant.

After this disclosure to law enforcement, Investigator Loos overtook the victim's Snapchat account, posed as her, sent messages to Mr. McKethan. He responded with messages that were sexual of [sic] nature, including saying that he loved her, quote, "sucking his dick".

. . . Investigator Loos informed the defendant that he -- she was only 15 years old at the time, which he acknowledged that he was aware of that and age was not important.

This then led to the arrest of Mr. McKethan and he was identified by the victim as the person that she engaged in fellatio with.

Following his arrest, the investigation proceeded. Another Health & Human Service intake -- this is for Count 2, on April 9th of 2021, indicated that a minor victim with the initials NR . . . had contact over social media with the defendant. He was using a Snapchat username of mr.t[**].

Again, she was offered marijuana, cigarettes, and alcohol if she would do sexual stuff with the defendant.

She ended up meeting up with the defendant in the fall of 2020, at which time she was 15 years old . . . . She believed she'd be meeting up with a 17 to 18-year-old.

She arrived at the vehicle; it was matching the description of the previous victim in Count 1.

She then was in the backseat of the car. She was offered marijuana and essentially vape pens. At that point, then she engaged in sexual penetration with penile, vaginal penetration with the defendant. He also . . . had her perform fellatio on him.

Snapchat records indicate that there was communication after that from Mr. McKethan saying that he quote, "wanted it again".

There was [sic] also conversations -- other sexual conversations with NR and Mr. McKethan.

This then led to further investigation regarding Count 3, where the mother of a minor child CL disclosed to her mother she was sexually assaulted by a man on a couple of occasions between September of 2020 and January of 2021.

She met the male on Snapchat. His Snapchat was mr.t[**] the same as the victim of Count 2.

During the Snapchat conversations it did turn sexual. He then offered to provide her with marijuana and nicotine vape pens in exchange for sexual acts.

She met up with Mr. McKethan, did have sex with him. On one incident he did use his phone and filmed himself engaging in sexual acts, including sexual acts of penetration and fellatio with CL. These were recovered on the defendant's phone that was seized from his person when he was arrested and searched pursuant to a search warrant.

CL, as well as her mother, did identify her as the victim on those incidents of sexual penetration by Mr. McKethan. She would have been 15 years old when that happened.

As the investigation proceeded for Count 4, there was a Snapchat search warrant return for mr.t[**], the Snapchat that Mr. McKethan was using, it did come back to him.

On that a fourth victim was identified having the initials GM. That victim was 14 years of age when she was communicating in November of 2021, with the defendant. The text messages were very sexual in nature including sending nude videos and photos to the defendant.

That person was identified by law enforcement. That person was contacted. GM submitted to a forensic interview at the Child Advocacy Center where she did indicate that, that was her talking on Snapchat with mr.t[**], which we identified as Mr. McKethan.

She did disclose one time meeting up with him where they engaged in penile and vaginal intercourse.

She was shown some photos and identified Mr. McKethan as the man that she met up with.

Finally, as to Count 5, around the same time this investigation was occurring Investigator McCord with the Lincoln Police Department was investigating a report of another minor child with the initials AH having Snapchat communications with mr.t[**].

During the investigation, Snapchat information was obtained and indicated that if AH met up with the defendant he would provide her with marijuana, puff bars, or vape pens if she had sex with him. The conversations were sexual.

She did meet up with the defendant during the time alleged in Count 5. They drove around, the defendant was trying to have sex with AH, eventually though she realized that she did not want to have sex with him, was able to talk her way out and exited the vehicle without having sex with Mr. McKethan, but the nature of the Snapchat communications prior to that were of sexual nature asking to get together and link up, the victim said was slang for meeting up to have sex.

She was under 16 years of age when those text messages occurred. All of the victims were under 16 years of age when these incidents occurred, and Mr. McKethan was over 19 years of age when these incidents occurred, and these events all occurred in Lancaster County, Nebraska.

McKethan did not dispute the facts recited by the State and affirmatively accepted the factual basis as true. The district court accepted McKethan's guilty pleas to the charges in the amended information and found him guilty of the same. The case was set for sentencing.

After a hearing on June 7, 2022, the district court sentenced McKethan to 20 to 25 years' imprisonment on each of the four counts of first degree sexual assault and on the count of attempted child enticement with an electronic communication device. The sentences were to run consecutively to each other, and to any sentence currently being served by McKethan. McKethan was given 138 days' credit for time served on count I. Additionally, McKethan was ordered to register pursuant to the Nebraska Sex Offender Registration Act (SORA) and was to be subject to lifetime community supervision by the Office of Parole Administration.

McKethan appeals.

## III. ASSIGNMENTS OF ERROR

McKethan assigns that (1) the district court erred when it imposed excessive sentences and (2) he received ineffective assistance from trial counsel who failed to (a) depose any alleged victim or witness, (b) advise McKethan about completing a "new quick and speedy trial demand" or filing a motion to resume his right to speedy trial under the relevant statutes, (c) investigate the unidentified conflict of the original judge or the potential spread of such conflict to other judges, and (d) file or advise McKethan to file a motion for appointment of a judge from a different judicial district after the original judge's recusal.

## IV. STANDARD OF REVIEW

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Lierman*, 305 Neb. 289, 940 N.W.2d 529 (2020). Abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id.*

Whether a claim of ineffective assistance of trial counsel may be determined on direct appeal is a question of law. In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. *State v. Blaha*, 303 Neb. 415, 929 N.W.2d 494 (2019).

## V. ANALYSIS

### 1. EXCESSIVE SENTENCE

McKethan was convicted of four counts of first degree sexual assault, each a Class II felony, and one count of attempted child enticement with an electronic communication device, also a Class II felony. A Class II felony is punishable by 1 to 50 years' imprisonment. See Neb. Rev. Stat. § 28-105 (Cum. Supp. 2020). McKethan was also subject to lifetime community supervision under SORA because he had a prior offense. See Neb. Rev. Stat. § 29-4005 (Reissue 2016). McKethan was sentenced to consecutive sentences of 20 to 25 years' imprisonment on each of the five counts; he was required to register under SORA and was subject to lifetime community supervision. His sentences were within the statutory range.

When imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the violence involved in the commission of the crime. *State v. Lierman, supra*. The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id.* Additionally, it is within the discretion of the trial court to impose consecutive rather than concurrent sentences for separate crimes. *State v. Artis*, 296 Neb. 172, 893 N.W.2d 421 (2017), *modified on denial of rehearing* 296 Neb. 606, 894 N.W.2d 349. For a defendant who has been sentenced consecutively for two or more crimes, an appellate court generally considers the aggregate sentence to determine if it is excessive. See *State v. Morton*, 310 Neb. 355, 966 N.W.2d 57 (2021).

McKethan was 43 years old at the time of sentencing. According to the presentence report (PSR), McKethan was single. He had 8 children, 5 of whom were still minors; he had contact with some of the children, and paid child support for some of the children. McKethan was a high school graduate with some college education. He had been incarcerated since February 2021.

McKethan's criminal history includes "Carry/Possess Firearm in Public" in 1996 (1 year of probation; satisfactorily released); theft in 2003 (1 year "Special Condition Discharge"); "Sexual Assault of a Minor – 1st Degree" in 2005 (10 to 20 years' imprisonment; SORA); and a SORA violation in 2020 (2 years' imprisonment and 9 months' post-release supervision). The details of his current offenses have been set forth previously.

The probation officer conducted a "Level of Service/Case Management Inventory." McKethan was assessed as a "[h]igh" risk to reoffend. He scored "[v]ery [h]igh" risk in the criminogenic risk factor domain for companions. He scored "[h]igh" risk in the domains for criminal history and leisure/recreation. He scored "[m]edium" risk in the domains for education/employment and antisocial pattern. He scored "[l]ow" or "[v]ery [l]ow" risk in the domains for family/marital, alcohol/drug problems, and procriminal attitude. McKethan was further assessed as a high risk on the "Vermont Assessment of Sex Offender Risk-2" and as a low risk on the "Sex Offender Treatment Intervention and Progress Scale"; with "a combined static and dynamic risk of Moderate-High" on the two assessments.

According to the PSR, McKethan reported that since his current incarceration, he had taken several classes and participated in sex offender treatment. He reportedly completed a re-entry

group called "Inner Circle," "Wellness" class, "Thinking for Change," "Mask Beware," parenting classes, and alpha classes. McKethan also reported being part of a fellowship of other men who helped to hold each other accountable. He said he had been learning a lot in treatment and did not feel like he was the same person that he was 2 years ago. He had positive and supportive relationships with his family members. McKethan wanted "to complete sex offender treatment and then 'transition out' of prison properly, noting that he would like a two to four year sentence ran concurrently." He had accounts on four different social media platforms but said he did not have any intention of using the accounts again and planned to have a "flip phone" upon his release. McKethan reportedly took responsibility for the current offenses and said he "manipulated the situation" and thought he "was going to get away with it." He had a "'lot of empathy'" for the victims and disappointment in himself.

At the sentencing hearing, McKethan's counsel stated, "Obviously, there are serious crimes that Mr. McKethan was convicted of here." Counsel noted that McKethan was previously convicted of first degree sexual assault "17 years" ago, and was "currently serving a sentence for [a SORA] violation," with a "jam date on that sentence . . . next week." Counsel pointed to McKethan's PSR wherein McKethan initially did not take responsibility for the crimes, but once convicted of the SORA violation and transferred to a different correctional facility he started treatment; counsel said that McKethan "had an awakening" at that point. McKethan had "done a complete 180 in terms of his outlook on this and acknowledging . . . what happened, wanting to take responsibility for . . . his actions and realizing that this is 100 percent not appropriate behavior." He "thrived in counseling" and "in the future would like to be involved in counseling in terms of helping others who have gone through similar things that he has gone through." Counsel also noted McKethan's children, his lack of substance abuse problems, and his willingness to take responsibility for the current offenses by pleading guilty.

McKethan personally addressed the district court and "apologize[d] again for what [he] put the young ladies and their families through," stating there was "absolutely no excuse for [his] actions." He also acknowledged what he put his own family through. McKethan stated that "[a] couple years ago" he would have "[j]ust [tried] to lie [his] way through this situation," and he previously did not take treatment seriously. But "for the first time in my life, Your Honor, I really took the treatment serious" and it has "really helped." McKethan was looking forward to "redeeming [himself]" and "proving [himself]."

The State argued that the "ultimate question" was whether McKethan could be trusted to not do these "violent and horrific things to children again." The State did not believe McKethan could be trusted out in society. It noted McKethan's previous sexual assault conviction on a young girl that resulted in a "considerable prison sentence," his conviction for violating SORA, and another count of violating SORA that was dismissed as part of the plea agreement in this case. The State said, "This is one of the more severe instances that we've had with simply a serial offender. The Lancaster County Sheriff's Office reports that they are still trying to identify victims that they've seen through information on his electronic devices." The State referred to McKethan as "every parent's worst nightmare in terms of their children and Internet safety and what can happen." The State believed that a "lengthy term of incarceration was appropriate to protect the safety of the public; specifically, minor young females," and it asked for consecutive sentences on all five counts.

The district court stated that it had reviewed the PSR and considered all the sentencing factors, mentioning several on the record, including McKethan's age, where he was from, and that he had minor children; his criminal record; and the nature of the offense which was "reprehensible and truly awful" and had a "significant impact on the victims" as noted in the victim impact statements. The court said it read the letters of support in McKethan's favor and noted that his plea did save a trial, he had expressed remorse, and taken steps towards treatment. The court then sentenced McKethan as set forth previously.

In his brief on appeal, McKethan contends that his sentences were excessive and an abuse of discretion because the district court did not give proper weight and consideration to his demeanor and attitude, the facts and circumstances surrounding his life, and his willingness to accept responsibility for the offenses and plead guilty. He further contends that the sentences exceed the minimum period necessary for the protection of the public and his rehabilitative needs.

Despite McKethan's assertions, the district court did consider the relevant circumstances. And having considered the relevant factors in this case, we find that McKethan's sentences were not excessive or an abuse of discretion and did not exceed the minimum period necessary for the protection of the public; his sentences are therefore affirmed. See, *State v. Lierman*, 305 Neb. 289, 940 N.W.2d 529 (2020) (sentence imposed within statutory limits will not be disturbed on appeal absent abuse of discretion by trial court).

## 2. INEFFECTIVE ASSISTANCE OF COUNSEL

Generally, a voluntary guilty plea or plea of no contest waives all defenses to a criminal charge. *State v. Blaha*, 303 Neb. 415, 929 N.W.2d 494 (2019). Thus, when a defendant pleads guilty or no contest, he or she is limited to challenging whether the plea was understandingly and voluntarily made and whether it was the result of ineffective assistance of counsel. *Id.*

McKethan has different counsel on direct appeal. When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record. *Id.* Once raised, the appellate court will determine whether the record on appeal is sufficient to review the merits of the ineffective performance claims. *State v. Lierman, supra*. A record is sufficient if it establishes either that trial counsel's performance was not deficient, that the appellant will not be able to establish prejudice, or that trial counsel's actions could not be justified as a part of any plausible trial strategy. *State v. Theisen*, 306 Neb. 591, 946 N.W.2d 677 (2020).

To prevail on a claim of ineffective assistance of counsel, the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. See, *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. Anderson*, 305 Neb. 978, 943 N.W.2d 690 (2020). To show that counsel's performance was deficient, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *State v. Blaha, supra*. In a plea context, deficiency depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases. *Id.* When a conviction is based upon a guilty or no contest plea, the prejudice requirement for an ineffective assistance of counsel claim is satisfied if the defendant shows a reasonable probability that but for the errors of counsel, the defendant would have insisted

on going to trial rather than pleading guilty. *Id.* The two prongs of the ineffective assistance of counsel test under *Strickland* may be addressed in either order. *State v. Blaha, supra.*

McKethan claims he received ineffective assistance from trial counsel who failed to (a) depose any alleged victim or witness, (b) advise McKethan about completing a new quick and speedy trial demand or filing a motion to resume his right to speedy trial under the relevant statutes, (c) investigate the unidentified conflict of the original judge or the potential spread of such conflict to other judges, and (d) file or advise McKethan to file a motion for appointment of a judge from a different judicial district after the original judge's recusal. We address each claim in turn.

### (a) Deposing Victims and Witnesses

McKethan claims that his trial counsel failed to depose any of the alleged victims or witnesses to investigate the State's case against him. "Namely, counsel did not depose T.J., N.R., C.L., G.M., or any of the parental figures who gave statements regarding the accusations." Brief for appellant at 17. "Because of [counsel's] lack of diligence in investigating potential defenses to or gaps in the State's case," McKethan "had no idea whether the plea agreement . . . was a proper resolution of the charges" and "he was not able to make a fully informed decision on whether or not to accept the plea offer in this case." *Id.*

McKethan's claim of ineffective counsel regarding the failure to depose victims or their parents fails because he cannot show prejudice. McKethan made incriminating statements to a law enforcement officer posing as one of the victims, filmed sexual acts with another victim, and there was significant social media evidence against McKethan related to the victims as evidenced by the factual basis and in police documentation found in the PSR. Additionally, McKethan accepted the factual basis provided by the State as true.

Moreover, as noted by the State, "McKethan knew whether the plea was a proper resolution of the charges because he pled to a very generous plea agreement." Brief for appellee at 21. He was originally charged with six counts: three Class IB felonies that were each punishable by a mandatory minimum of 15 years' imprisonment and up to life imprisonment, see §§ 28-105 and 28-319.01; two Class IC felonies that were each punishable by a mandatory minimum of 5 years' imprisonment and up to 50 years' imprisonment, see § 28-105; and one Class IIIA felony that was punishable by up to 4 years' imprisonment, see § 28-105. Instead, McKethan was able to plead to five Class II felonies, each punishable by 1 to 50 years' imprisonment, with no mandatory minimums. Because McKethan has not shown a reasonable probability that he would have insisted on going to trial, this claim fails. See *State v. Anderson, supra.*

### (b) Speedy Trial

McKethan acknowledges that on December 16, 2021, he withdrew his quick and speedy trial demand to allow the case to be continued to the next jury term. Then on April 5, 2022, the judge who had accepted his waiver recused herself due to an unidentified conflict.

McKethan claims that following the recusal, trial counsel failed to advise him regarding completing a new quick and speedy trial demand pursuant to Neb. Rev. Stat. §§ 29-3801 through 29-3809 (Reissue 2016) (prisoner detainer to assert 180-day statutory speedy trial rights) and a motion to resume his right to a speedy trial pursuant to Neb. Rev. Stat. § 29-1207 (Reissue 2016)

(6-month speedy trial computation). Thus, McKethan "was unable to make an informed decision" about how to proceed. Brief for appellant at 18.

The bill of exceptions reflects that McKethan "filed a detainer" in August 2021. At a hearing on October 28, 2021, the matter was continued to January 3, 2022, for "good cause." Then at a hearing on December 16, 2021, McKethan withdrew his retainer and waived his right to a speedy trial because an additional victim was being added to the case. The district court advised McKethan that it would be considered an "open-ended waiver" and that in order to get his speedy trial right back, it would need to be requested through the court in writing. When asked if he understood, McKethan responded, "Yes, Your Honor." The court accepted McKethan's waiver of his right to a speedy trial and also found "that the request for the quick and speedy disposition of this case, the detainer, that, that be removed and vacated." The matter was continued to the March 2022 term. At a docket call in February, McKethan's counsel asked the court to pass the case to the next term "to get discovery" and discuss a plea offer that was received; the court continued the case to the May 2 trial term and noted the previous open-ended waiver. The "Judges Notes" in the transcript show that on April 5, the judge recused herself "[d]ue to a conflict." On April 27, the newly assigned judge continued the case to the July 5 jury term "[o]n Defendant's motion." However, McKethan ultimately entered his guilty pleas to the charges in the amended complaint on May 4.

The State contends that McKethan's claim regarding his statutory speedy trial right under § 29-1207 is without merit "because at all relevant times . . . McKethan was in the custody of the Nebraska Department of Correctional Services and committed offenders' statutory speedy trial rights are governed by the detainer statutes . . . §§ 29-3801 to 29-3809." Brief for appellee at 22.

Regardless of whether McKethan's claim is considered under § 29-1207 or §§ 29-3801 to 29-3809, he does not allege that he was outside of the 6-month or 180-day speedy trial window when he ultimately pled guilty, especially in light of the continuances made on his own request. Therefore, he has not shown prejudice and these claims of ineffective assistance of counsel related to speedy trial fail.

McKethan also argues, but did not assign as error, ineffective assistance of counsel related to his constitutional rights to a speedy trial. An alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court. *State v. Stelly*, 308 Neb. 636, 955 N.W.2d 729 (2021).

### (c) Recusal of Judge

McKethan claims his trial counsel was ineffective because counsel failed to investigate the unidentified conflict of the original judge or the potential spread of such conflict to other judges within the district. He argues that, "In failing to investigate the source of the unidentified conflict, counsel was not informed on the extent to which it affected the decisions of the original judge prior to the recusal. Moreover, counsel was unable to determine the extent to which this conflict may have spread to other judges and staff within the judicial district," given that "all of the district court judges and staff work in the same building, on the same floor, and within a few doors of each other." Brief for appellant at 19. "The answer to these questions would have been crucial in determining whether remaining in the judicial district for further proceedings was appropriate under the circumstances." *Id*. And, as a result, "[he] lacked the necessary information to determine

whether the plea agreement was in his best interest . . . prior to entering his plea before a new judge from the same judicial district on May 4, 2022." *Id.*

We agree with the State that this argument "is not sufficiently alleged as to deficient performance because the allegation is based on pure speculation and conjecture." Brief for appellee at 23. See *State v. Sierra*, 305 Neb. 249, 939 N.W.2d 808 (2020) (raising claim of ineffective assistance based on mere conjecture that something inappropriate may have occurred during proceedings is not enough). Further, as already discussed, McKethan accepted a generous plea offer and he has not shown a reasonable probability that he would have insisted on going to trial. This claim fails.

McKethan's claim that his trial counsel was ineffective for failing to file or advise him to file a motion for appointment of a judge from a different judicial district after the original judge's recusal also fails. His argument goes back to the reason for the original trial judge's recusal and that "[t]his unidentified conflict had not only the potential, but the likelihood of spreading to other judges and staff." Brief for appellant at 20. McKethan also argues, "Seeing as the subsequently appointed judge from the same district sentenced [him] excessively with five consecutive sentences to 20-25 years imprisonment, it is entirely feasible that the subsequent judge was in some way affected by the unidentified conflict that caused the original judge to recuse herself." *Id*. Again, McKethan's argument is pure speculation and conjecture. Moreover, we have already found that McKethan's sentences were neither excessive nor an abuse of discretion. Therefore, McKethan's claims of ineffective assistance of counsel regarding the original judge's recusal or its effect on other judges in the district fail.

## VI. CONCLUSION

For the reasons stated above, we affirm McKethan's sentences. We also find that all claims of ineffective assistance of counsel raised in this direct appeal fail.

AFFIRMED.