IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. SAID

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

AHMED M. SAID, APPELLANT.

Filed October 11, 2022.    No. A-21-745.

Appeal from the District Court for Hall County: MARK J. YOUNG, Judge. Affirmed.

Ahmed M. Said, pro se.

Douglas J. Peterson, Attorney General, and Austin N. Relph for appellee.

PIRTLE, Chief Judge, and BISHOP and ARTERBURN, Judges.

ARTERBURN, Judge.

INTRODUCTION

This is a postconviction appeal. Appellant, Ahmed M. Said, was charged with second degree murder and use of a deadly weapon to commit a felony in relation to the death of Adulma Khamis in April 2017. Said was found guilty by a jury of both counts and sentenced to consecutive terms of 60 to 80 years' imprisonment and 25 to 30 years' imprisonment. On direct appeal, the Nebraska Supreme Court affirmed Said's conviction and sentences. See *State v. Said*, 306 Neb. 314, 945 N.W.2d 152 (2020). Said timely filed a motion for postconviction relief. The district court denied the motion without an evidentiary hearing. Said appeals. He alleges that the court erred in failing to find that his trial counsel was ineffective and that there was plain error on the record. For the reasons set forth herein, we affirm.

- 1 -

BACKGROUND

On April 13, 2017, Khamis was found unconscious outside a residence five blocks from Pioneer Park in Grand Island, Nebraska. Khamis died six days later as a result of a closed-head injury caused by blunt force trauma. Police investigated the death as a homicide, and eventually developed Said as a suspect. Said was ultimately charged with second degree murder and use of a deadly weapon to commit a felony.

*Said's Letter and Motion to Suppress.*

Prior to trial, Said's counsel filed a motion to suppress statements Said made during interviews with law enforcement on four separate occasions as well as a letter Said wrote to his sister while in jail awaiting trial. A more detailed description of all the interviews and the motion to suppress can be found at *State v. Said, supra*. For purposes of the issues raised in this appeal, we need only focus on Said's April 20, 2017, interview with law enforcement and the letter.

On April 19, 2017, Said was arrested on a charge unrelated to the present case. Grand Island Police Officer Steve Sloan and a second officer interviewed Said on that date regarding the unrelated charge. On April 20, Sloan returned to speak with Said alone and asked him if he would be willing to discuss the assault of Khamis. Sloan read Said his *Miranda* rights and asked whether he would speak without an attorney to which Said replied, "uh no." Sloan then repeated the question and Said again replied, "no I do not." Sloan then continued trying to convince Said to talk, explaining that this was "something . . . different" than what was discussed the day prior. Said finally agreed to speak to Sloan for about 21 minutes before stating, "no more talking." The interview continued for another 20 minutes before concluding. The trial court ruled that the statements after the 21 minute mark should be suppressed. The court determined that although Said stated that he did not want to speak to Sloan without an attorney at the beginning of the interview, Sloan's followup statements were an attempt to clarify the subject matter of the interview and that Said spoke voluntarily up until the 21 minute mark when he said "no more talking." On direct appeal, the Supreme Court held that the trial court erred in this determination and that the entirety of the April 20 interview should have been suppressed. However, the court found that the failure to suppress all of the interview was harmless error. The court noted the State's argument that Said made no confession or statements in the interview that were in and of themselves incriminating. The court then concluded:

> We agree that the error in admitting statements from the April 20, 2017, interview was harmless error. Viewing the statements in the context of the "entire record" and "the rest of the untainted, relevant evidence of guilt," [citations omitted] we determine the guilty verdict in this case was "surely unattributable" to the error in admitting the statements. [Citations omitted.] There was other evidence that Said attempted to diminish his involvement in this case, and to the extent the statements might have been seen as evidence of his credibility, the court made clear to the jury in the curative instruction that Said's credibility was not at issue.

*State v. Said*, 306 Neb. 314, 333, 945 N.W.2d 152, 169 (2020).

Nine days after the April 20, 2017, interview with Sloan, Said wrote a letter to his sister while still in detention. In the letter, Said wrote:

I don't know how to start but the man that I told you about had died the same day I got arrested and the homicide investigators are on my ass and Masalah had told them everything that I've told 'em so please before they put their case on me bond me out or get me an attorney aka lawyer cause I don't wanna spend my whole life in prison Wallahi. Sis I never thought I would be in a position like this so please get me a good lawyer that will dismiss the case, cause I read on the newspaper and they said they have solved a homicide case. I don't know if it's the one that involves me or I don't really know. And please do me a favor and go to the car shop by the park and ask them does the side camera work and pretend like you live at the white house located in the alley way cause if the camera does work it's a done deal for me cause that's where it all happened and Hussein told them everything so if you see 'em press his ass, so yeah & please don't write back cause they will read everything that comes in, NOT OUT. Please & thank you.

Said's attorney moved to suppress this letter as being tainted by the substance of the April 20, 2017, interview, due to Sloan's disregard of Said's invocation of *Miranda*. Said argued that the letter should be suppressed because he wrote it based on information he received from the investigators during the allegedly improper April 20 interview. The trial court denied Said's motion to suppress the letter because (1) the court had concluded that the interviews on April 19 and most of the interview on April 20 did not result in a violation of Said's constitutional rights; (2) evidence during the hearing showed that Said had access to information contained in the letter from sources independent of the interviews; and (3) writing the letter constituted voluntary conduct on Said's part and was not a result of police misconduct.

At trial, the letter was admitted into evidence as exhibit 10. During the State's closing arguments, the letter was read in its entirety and the State referenced the letter several times as it related to the other evidence presented at trial. On direct appeal, Said alleged the trial court erred in overruling his motion to suppress and admitting the letter into evidence. Again, Said argued that the letter was tainted by the improper April 20, 2017, interview with Sloan. The crux of his argument was that in violating Said's rights after he invoked *Miranda*, law enforcement pressured Said with adverse information. Said argued that writing the letter was a "scared and panicked reaction" and that had Sloan ceased questioning on April 20 he never would have felt pressured to write the letter.

The Supreme Court held that the trial court did not err in overruling Said's motion to suppress the letter. The court assumed without deciding that the "Fruit of the Poisonous Tree" doctrine applied in the case. However, the court found that there was no causal connection between the April 20, 2017, interview and the later discovery of Said's letter to his sister because Said's action of writing the letter several days after the interview broke the causal chain. In reaching this conclusion, the court posed the relevant question as "whether the evidence [had] been obtained by exploiting the primary illegality or [had] instead been obtained by means sufficiently distinguishable so as to be purged of the primary taint." *State v. Said*, 306 Neb. 314, 334, 945 N.W.2d 152, 170 (2020). The court found that law enforcement's discovery of the letter was not due to any police exploitation of the April 20 interview.

*Other Evidence Presented at Trial.*

The State's theory of the case at trial was that Said hit Khamis over the head with a metal pole during the course of an altercation. The State believed that Khamis remained conscious for several hours after being struck. He wandered away from the park where the altercation took place until he reached the residence where he was found the next morning. The State supported this theory with testimony from Hussein Nuri. Nuri testified that he was familiar with both Khamis and Said as all three were "regulars" at Pioneer Park in Grand Island. In the days following Khamis' death, officers investigated the area around Pioneer Park and spoke to community members about Khamis' movements on April 12, 2017, the day of the altercation. Law enforcement spoke to Nuri several times because he had been in jail with Khamis the night before Khamis was assaulted. Following one police interview, Nuri testified, Said pulled him aside, told him to speak in Somali so others would not understand, and asked Nuri what the officers were talking to him about. It was at this time, according to Nuri, that Said told him that he had hit Khamis in the back of the head with a metal pole the night before he was found.

Internet searches on Said's phone revealed that from April 13, 2017, the date Khamis was found, to April 19, Said was seeking out information related to Khamis. Said's internet searches included searches for his own name, Khamis' name, Nuri's name, obituaries, and warrants. He also searched for information regarding serious head injuries, local hospitals, intensive care units, critical condition, and what happens after someone is hit on the head with a metal pole. These searches occurred prior to law enforcement releasing any information about the cause of Khamis' death to the public.

The State also presented evidence from a security camera video of Khamis and Said fighting near an alley on the evening of April 12, 2017. The security camera footage came from a business near Pioneer Park. The parties stipulated at trial that the video depicted a fist fight between Khamis and Said. However, the video did not show the actual blow that resulted in Khamis' death. The footage showed Khamis and Said engage in a short fight and then move off camera toward the alleyway. According to the State's theory, that is when Said hit Khamis' head with a metal pole.

Said challenged the State's trial theory by arguing that the State's timeline was impossible. Instead, according to the defense, the death blow was much more likely to have occurred at the residence where Khamis was found, rather than being inflicted by Said in the alleyway earlier in the night. Defense counsel pointed out inconsistencies between the severity of the injury suffered and the State's contention that Khamis remained conscious for several hours after being hit on the head. Trial counsel emphasized that the surveillance video did not show Said hitting Khamis with a metal pole, but rather showed a simple fist fight where Khamis could be characterized as the aggressor. During cross-examination, Said's counsel attempted to impeach Nuri's testimony as well as the testimony of the State's other witnesses. Ultimately, the jury found Said guilty of both counts alleged in the information. The district court sentenced Said to 60 to 80 years' imprisonment for his conviction of second degree murder and to 25 to 30 years' imprisonment for his conviction of use of a deadly weapon. The court ordered the sentences to run consecutively. On direct appeal, the Supreme Court affirmed Said's convictions and sentences.

On July 14, 2021, Said filed a motion for postconviction relief. Said alleged his trial counsel was ineffective for making an unsuccessful argument with regard to his motion to suppress the contents of the letter written to his sister, and for failing to file a motion in limine to exclude the surveillance video showing Khamis and Said engaged in an altercation. Said also alleged that there was plain error when the trial court allowed Nuri to testify. The district court denied Said's motion without an evidentiary hearing. The court found that Said's claims were conclusory, not supported by the record, and that he failed to state a claim for which postconviction relief could be granted. Said now appeals.

ASSIGNMENTS OF ERROR

In this appeal, Said claims the district court erred in denying his motion for postconviction relief without an evidentiary hearing. Said's assignments of error, restated and renumbered, are that the district court erred in (1) finding that his trial counsel was not ineffective for arguing that the letter to Said's sister should be suppressed as fruit of law enforcement's unlawful interview with Said instead of arguing that Said's writing of the letter was involuntary given the totality of the circumstances; (2) finding that his trial counsel was not ineffective for failing to file a motion in limine to exclude surveillance video footage of the fight between Said and Khamis on April 12, 2017; and (3) failing to find that the court's receipt of Nuri's testimony was plain error.

STANDARD OF REVIEW

In appeals from postconviction proceedings, an appellate court reviews de novo a determination that the defendant failed to allege sufficient facts to demonstrate a violation of his or her constitutional rights or that the record and files affirmatively show that the defendant is entitled to no relief. *State v. Lotter*, 311 Neb. 878, 976 N.W.2d 721 (2022). On appeal from the denial of postconviction relief without an evidentiary hearing, the question is not whether the movant was entitled to relief by having made the requisite showing; instead, it must be determined whether the allegations were sufficient to grant an evidentiary hearing. *State v. Henderson*, 301 Neb. 633, 920 N.W.2d 246 (2018).

ANALYSIS

In a proceeding under the Nebraska Postconviction Act, the movant is required to allege facts which, if proved, constitute a violation or infringement of constitutional rights, and the pleading of mere conclusions of fact or of law is not sufficient to require the court to grant an evidentiary hearing. *State v. Henderson, supra*. An evidentiary hearing must be granted where the facts alleged, if proved, would justify relief, or when a factual dispute arises as to whether a constitutional right is being denied. *Id.*

In order to establish a right to postconviction relief based on a claim of ineffective assistance of counsel, the defendant has the burden, in accordance with *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), to show that counsel's performance was deficient; that is, counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *State v. Armendariz*, 289 Neb. 896, 857 N.W.2d 775 (2015). The defendant must also show that counsel's deficient performance prejudiced the defense in his or her case. *Id.* The prejudice prong of a claim of ineffective assistance of counsel is established when the

defendant shows a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *Id.* A reasonable probability does not require that it be more likely than not that the deficient performance altered the outcome of the case; rather, the defendant must show a probability sufficient to undermine confidence in the outcome. *Id.*

In this appeal, Said asserts two claims of ineffective assistance of his trial counsel. First, Said claims his counsel was ineffective for attempting to suppress the letter under the Fruit of the Poisonous Tree doctrine instead of asserting that the letter was involuntarily written due to police coercion. Second, he asserts that his counsel was ineffective for failing to file a motion in limine to exclude the surveillance video which depicted Said and Khamis engaging in a mutual fist fight. We will address each assertion in turn.

*Said's Letter to His Sister.*

Said argues that his counsel was ineffective for attempting to suppress the letter written to his sister under the Fruit of the Poisonous Tree doctrine because the doctrine is generally inapplicable to violations of *Miranda*. Instead, Said argues, counsel should have moved to suppress exhibit 10 as being involuntarily written. We find no merit to this claim.

Exhibit 10 was the letter Said wrote to his sister while he was still in custody. This letter was written by Said in his cell, nine days after the April 20, 2017, interview. The Supreme Court found that Said's constitutional rights were violated because law enforcement ignored Said's invocation of his right to remain silent. However, the court found that, assuming the Fruit of the Poisonous Tree doctrine was applicable, the letter would still be admissible. The court found the letter was not the result of exploitation of the April 20 interview.

In his brief to this court, Said argues that his counsel should have instead moved to exclude the letter under the voluntariness test as stated in *Haynes v. State of Wash.*, 373 U.S. 503, 83 S. Ct. 1336, 10 L. Ed. 2d 513 (1963). The voluntariness test requires the trial court to assess the totality of the circumstances to determine whether the defendant freely, voluntarily, and without compulsion or inducement of any sort by law enforcement confessed or made an incriminatory statement. In other words, the question is whether the defendant's will was overborne such that the statement complained of was compelled in violation of his right to due process. *Id.* Coercive police conduct is a necessary predicate to a finding that a statement is involuntary. *State v. Montoya*, 304 Neb. 96, 933 N.W.2d 558 (2019). Applying this test to Said's letter shows that Said's contention is meritless.

Said's basis for excluding the letter is somewhat ambiguous. To the extent that Said's argument is that the April 20, 2017, interview compelled him to write the letter, that issue was resolved by the Supreme Court on direct appeal. There, the Supreme Court held that there was no causal connection between the April 20 interview and the writing of the letter nine days later. We will not relitigate this issue.

Assuming Said actually is arguing that there was some other police coercion that made the writing of the letter itself involuntary, his argument is affirmatively refuted by the record. Evidence presented at trial demonstrates that Said wrote the letter outside the presence of any law enforcement officer. Nothing in the record shows coercion or even a request by law enforcement officers to get Said to write the letter. In fact, the letter itself suggests that Said wrote the letter specifically with the intention of keeping it away from law enforcement as indicated by the last

line where he says, "please don't write back cause they will read everything that comes in, NOT OUT." Said's claim that his counsel was ineffective for failing to argue the voluntariness test fails. A defense counsel will not be found ineffective for failing to raise an argument that is meritless. *State v. Stricklin*, 300 Neb. 794, 916 N.W.2d 413 (2018). The district court did not err in denying Said an evidentiary hearing on this claim.

Finally, in relation to his ineffective assistance of counsel claims, Said argues but does not specifically assign as a separate error that his counsel was also ineffective for failing to challenge other evidence that he believes flows from the receipt of the letter into evidence. According to Said, the letter was the basis for the search warrant of Said's cell phone, which provided inculpatory evidence, such as the internet search terms, that was admitted at trial. He further reasons that the admission of the letter led the court to limit his defense when the court ruled that evidence of the victim's mental health issues was not relevant and therefore not admissible. An alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court. *State v. Thomas*, 303 Neb. 964, 932 N.W.2d 713 (2019). Here, it is questionable whether Said's assignments of error encompass these arguments. However, assuming without deciding that we can consider this argument, the argument fails. The record affirmatively establishes that the letter was properly admitted into evidence at trial. As such, since the letter was admissible, any evidence that flowed from law enforcement's discovery of the letter was not tainted.

*Motion in Limine for Surveillance Video.*

Said also claims that his counsel was ineffective for failing to file a motion in limine to exclude the surveillance video which depicted Said and Khamis engaging in a fist fight in Pioneer Park the night before Khamis' body was found. According to Said, the video should have been excluded under Neb. Rev. Stat. § 27-403 (Reissue 2016) because the risk of unfair prejudice substantially outweighed the probative value. This claim is also affirmatively refuted by the record. The surveillance video clearly constituted relevant evidence. The video depicting Khamis and Said engaged in a fist fight just during the evening before the fatal blow took place is highly probative, particularly when viewed in light of the testimony of Nuri and the information gleaned regarding Said's internet searches. Khamis died as a result of a blow to the head. Had defense counsel filed a motion in limine to exclude the video, it would have been unsuccessful. As stated earlier, defense counsel is not ineffective for refraining from making meritless arguments. The district court did not err in dismissing this claim without an evidentiary hearing.

*Plain Error.*

Finally, Said argues that the district court erred by failing to find plain error committed by the trial court in allowing Nuri to testify. In determining whether a motion for postconviction relief contains factual allegations that, if proved, constitute an infringement of the movant's constitutional rights and whether the records and files affirmatively show the defendant is entitled to no relief, we consider whether the allegations are procedurally barred. *State v. Stelly*, 308 Neb. 636, 955 N.W.2d 729 (2021). "Plain error cannot be asserted in a postconviction proceeding to raise claims of error by the trial court." *State v. Allen*, 301 Neb. 560, 572, 919 N.W.2d 500, 510

(2018). We will not address Said's plain error claim here. The district court correctly dismissed this claim without an evidentiary hearing.

## CONCLUSION

For the reasons stated above, we affirm the decision of the district court to deny Said's motion for postconviction relief without an evidentiary hearing.

AFFIRMED.